**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Jacksonville Division**

| | |
|---|---|
| **ERICKA M. BYRD, KEMONE BROOKS,** ) | |
| **QUANTEZ MOORE, and** ) | |
| **EARNESTINE LAWSON, on behalf of** ) | |
| **themselves and on behalf of others** ) | |
| **who are similarly situated,** ) **Case No.:** | |
| **Plaintiffs** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **JWB PROPERTY MANAGEMENT, LLC and** ) | |
| **JWB REAL ESTATE CAPITAL, LLC** ) | |
|     **Defendants.** ) | |

**CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiffs seek to vindicate the rights of Black housing applicants in Jacksonville, Florida who are disparately impacted by Defendants' tenant screening policy which bars them from tenancy at rental housing owned, managed, controlled, or leased by Defendants based on a screening criterion that is not an indicia of tenant worthiness. In furtherance of these claims, they allege as follows:

**NATURE OF ACTION**

1.    JWB Property Management, LLC ("JWB") does business as JWB Rental Homes and rents homes in Duval County, Florida, almost exclusively in census tracts with a Black population greater than mean percentage of Black residents in all of Duval County, Florida.

2.    Through a related entity, JWB Real Estate Capital, LLC ("JWB Capital" collectively "Defendants"), which owns rental property in Duval County,

JWB engages tenant screening companies such as SafeRent Solutions, LLC ("SafeRent"), to provide tenant screening services in advance of JWB renting homes to the prospective residents.

3.     Upon information and belief and based on information publicly available on websites owned or controlled by Defendants, as well as the experiences of the named Plaintiffs, Defendants implement, utilize, and enforce a policy to determine tenant worthiness that discriminates against Black rental applicants in violation of the Fair Housing Act 42 U.S.C. § 3604.

4.     At JWB and JWB Capital's direction and request, when someone applies to rent from either Defendant, or from Defendants collectively, SafeRent or another tenant screening company compiles and reports the mere existence of eviction *filings* against rental applicants to JWB and JWB Capital without regard to the correctness of the filing or the case disposition.

5.     Such criteria (i.e. the consideration of mere filings) discriminates against Black rental applicants as compared to White rental applicants because, upon information and belief and based on the experiences of the named Plaintiffs, the number of eviction *filings* in Duval County and nationwide are against a disproportionate number of Black renters per Duval County Court records, and see https://evictionlab.org/demographics-of-eviction/#:~:text=The%20absolute%20and%20relative%20disparities,Latinx%20women%20than%20Latinx%20men) (last visited March 9, 2023), and because the properties that Defendants own, operate, lease and advertise for rental, are

located in census tracts that are predominantly black or contain a higher percentage of black residents than Duval County as a whole per the U.S. Census Bureau 2020 Census.

6.      Defendants in this case have contracted to receive information and set leasing criteria from its chosen tenant screening company(ies) regarding eviction *filings* that has no bearing on tenant worthiness.

7.      Eviction cases may be erroneously filed after tenants cured deficiencies or are filed for minor or personal disputes that do not warrant eviction, or where no lease default occurred or was insufficient to warrant eviction, and other reasons such as inadvertence and disregard of the law.

8.      In addition, eviction histories reported by tenant screening "Consumer Reporting Agencies" such as SafeRent, routinely include information that is inaccurate, outdated, or that belongs to someone other than the subject of the screening report. https://files.consumerfinance.gov/f/documents/cfpb_consumer-reporting-rental-information_bulletin-2021-03_2021-07.pdf (Last visited December 12, 2022.)

9.      Eviction cases are filed and reported against incorrect defendant-tenants.

10.     For example, eviction cases are inadvertently filed against people who never lived at the subject property, who are minors living at the property, who are

non-signatories to the lease, or who cured any alleged cause for eviction within the statutorily set time.

11.    Other cases are filed against tenants who happen to have the same or similar name as an innocent rental applicant, and these records are erroneously reported as belonging to the innocent rental applicant as opposed to the actual tenant that the property owner sought to evict.

12.    For example, according to the Duval County Court website, there are seventeen James Johnson's living or who have lived in Jacksonville who have an eviction history in the last five years.

13.    Eviction cases are also won by defendant-tenants on the merits.

14.    For these and other reasons, the existence of an eviction *filing* tells nothing of tenant worthiness and is not a reasonable criterion to be used in tenant selection.

15.    JWB and JWB Capital's use and advertisement of policy that uses the mere existence of an eviction *filing* to reject tenant applicants has a disparate impact on Black renters in Duval County and no business necessity justifies the use of the criterion.

16.    Plaintiffs seek to end Defendants' discriminatory tenant screening practices and remove the artificial, arbitrary, and unnecessary barrier imposed by Defendants and, accordingly, bring their claims on behalf of themselves as well as a class of all other similarly situated Black individuals whose rental applications

were denied by Defendants on account of the policy based on their having an unproven, unadjudicated or dismissed eviction filing against them.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over Plaintiffs' federal Fair Housing Act claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3613.

18. The Fair Housing Act ("FHA") explicitly provides for federal jurisdiction over FHA claims, 42 U.S.C. § 3613.

19. Venue is proper pursuant to 28 U.S.C. § 1391 (b) (1) and (2) as Defendants reside in the judicial district where the claim is brought, and a substantial part of the events and the properties that are the subject matter of the claims are or were in the judicial district where the claim is brought.

## PARTIES

20. Plaintiff Ericka M. Byrd is a 54-year-old Black woman who resides in Jacksonville, Florida, Duval County, who applied to and was denied housing by JWB.

21. Ms. Byrd's rental application with JWB for an apartment rented by JWB was denied because a search of court records by SafeRent found an eviction filing against her that was erroneously filed.

22. Plaintiff Kemone Brooks is a 28-year-old Black woman who resides in Jacksonville, Florida, Duval County, who applied to and was denied housing by JWB.

23.     Ms. Brooks' rental application with JWB for an apartment rented by JWB was denied because a search of court records by SafeRent found an eviction filing against her that was erroneously filed, had been dismissed and its documents and docket had prior to the denial been ordered sealed from public view.

24.     Plaintiff Quantez Moore is a 30-year-old Black man who resides in Jacksonville, Florida, Duval County, who applied to and was denied housing by JWB.

25.     Mr. Moore's rental application with JWB for an apartment rented by JWB was denied because a search of court records by SafeRent found an eviction filing against him that was erroneously filed, had been dismissed and its documents and docket had prior to the denial been ordered sealed from public view.

26.     Plaintiff Earnestine Leckeyccia Lawson is a 51-year-old Black woman who resides in Jacksonville, Florida, Duval County, who applied to and was denied housing by JWB Rental Properties.

27.     Ms. Lawson's rental application with JWB for an apartment rented by JWB was denied because a search of court records by SafeRent found an eviction filing against someone with a similar name.

28.     Defendant JWB Property Management, LLC is a Florida Corporation, and its principal place of business is 7563 Phillips Highway, Suite 208 Jacksonville, Florida 32256 and manages rental property in Duval County, Florida.

29.    Defendant JWB Real Estate Capital, LLC is a Florida Corporation, and its principal place of business is 7563 Phillips Highway, Suite 208 Jacksonville, Florida 32256 and owns rental property in Duval County, Florida. https://www.jwbrealestatecapital.com/invest/ (Last visited March 9, 2023.)

30.    JWB is the property management arm and is "vertically integrated" with JWB Real Estate Capital, LLC with a stated goal of saving real estate investors time                                and                                money. https://www.jwbrealestatecapital.com/propertymanagement/(Last visited March 9, 2023.)

31.    JWB maintains a website under the name JWB Rental Homes, see https://www.jwbrentalhomes.com/houses-for-rent/ (last visited March 9, 2023), and, according to the JWB Capital website, JWB and JWB Capital's integrated business model is the perfect solution for investors who want to own and manage rental properties in Duval County.

32.    According to JWB Capital, it has over 4,900 rental properties in Jacksonville.    https://www.jwbrealestatecapital.com/why-jacksonville/    (Last visited March 9, 2023.)

33.    Those units are currently managed by JWB, which also accepts and screens applications for tenancy for those units.

34.    JWB also manages all its properties under the same terms, conditions and                tenant                eligibility                requirements.

https://www.dropbox.com/s/q96av6l0ctemnd3/PMA%20-%202021.pdf?dl=0

(Last visited March 9, 2023.)

## FACTUAL ALLEGATIONS

35.     Many if not all the properties owned by JWB Capital or managed by JWB are at some point listed and marketed for rent on JWB's website.

36.     Upon information and belief Defendants list, market, advertise, and rent hundreds, if not thousands of properties per year.

37.     When a housing seeker sees a property, they are interested in leasing on the JWB website, they are prompted to click on a radio button for that property to "schedule a showing."   https://www.jwbrentalhomes.com/houses-for-rent/ (Last visited March 9, 2023.)

38.     Clicking that button causes a screen with policies and pre-qualifying questions propounded by JWB to appear including questions about the existence of past due balances with a landlord, mortgage provider, or utility provider in the past 5 years. https://showmojo.com/l/ff97bd20ca/1419-brady-st-2-jacksonville-fl-32209?g=1&iframe   and   https://showmojo.com/l/05e1b8b0d0/5548-playa-way-24-jacksonville-fl-32211?g=1&iframe (Last visited October 6, 2022).

39.     It also asks for the housing seeker to enter their verifiable income. https://showmojo.com/l/ff97bd20ca/1419-brady-st-2-jacksonville-fl-32209?g=1&iframe and https://showmojo.com/l/05e1b8b0d0/5548-playa-way-24-jacksonville-fl-32211?g=1&iframe (last visited October 6, 2022), and

https://showmojo.com/l/6cc447c053/5241-alpha-ave-jacksonville-fl-32205?g=1&iframe. (Last visited March 9, 2023.)

40.    It also refers to its blanket policy disqualifying applicants with the question: "Do you have any felony convictions or eviction filings on your record in the past five years?" See, e.g., https://showmojo.com/l/ff97bd20ca/1419-brady-st-2-jacksonville-fl-32209?g=1&iframe                             and https://showmojo.com/l/05e1b8b0d0/5548-playa-way-24-jacksonville-fl-32211?g=1&iframe       (last       visited       October       6,       2022),       and https://showmojo.com/l/6cc447c053/5241-alpha-ave-jacksonville-fl-32205?g=1&iframe. (Last visited March 9, 2023.)

41.    Another question requires the housing seeker to agree to provide a photo of their driver's license to arrange and confirm the showing. https://showmojo.com/l/ff97bd20ca/1419-brady-st-2-jacksonville-fl-32209?g=1&iframe and https://showmojo.com/l/05e1b8b0d0/5548-playa-way-24-jacksonville-fl-32211?g=1&iframe, (last visited October 6, 2022), and https://showmojo.com/l/6cc447c053/5241-alpha-ave-jacksonville-fl-32205?g=1&iframe. (Last visited March 9, 2023.)

42.    One prequalification question asks "[d]o you understand to complete and process your application, you will be charged a NON-REFUNDABLE application fee in the amount of $75 per adult (max $150 per household)?" https://showmojo.com/l/ff97bd20ca/1419-brady-st-2-jacksonville-fl-

32209?g=1&iframe and https://showmojo.com/l/05e1b8b0d0/5548-playa-way-24-jacksonville-fl-32211?g=1&iframe (Last visited October 6, 2022.)

43.    The amount of the non-refundable deposit has increased to $80 per adult with a maximum of $160 per household. https://showmojo.com/l/6cc447c053/5241-alpha-ave-jacksonville-fl-32205?g=1&iframe (Last visited March 9, 2023.)

44.    If a housing seeker contacts the JWB office by phone rather than through its website, they will be asked the same prequalification questions.

45.    Only after reviewing the policies, completing the prequalification questions, and meeting the prequalification criteria may a housing seeker can schedule an in person or virtual showing of their chosen property.

46.    Once a housing seeker decides to move forward on a particular property, they are required to fill out an application and pay the non-refundable application fee as set forth in the prequalification survey fee of either $75 per adult up to $150 per household or $80 per adult up to $160 per household, depending upon when the application was submitted.

47.    The housing seeker is then subjected to pre-tenancy screening process by a tenant screening service, who acts as an agent of Defendants, purportedly to help determine tenant worthiness.

48.    JWB Capital engages SafeRent to supply tenant screening services, including SafeRent Score reports, for itself and on behalf of JWB.

49.    SafeRent provides tenant screening services, including SafeRent Score reports, to housing providers throughout the country.

50.    SafeRent also provides what it calls a Registry Check report showing any eviction complaints filed against the housing seeker.

51.    The Registry Check report states the number of eviction records on file, the name of the parties, the case number, date of the filing and the court where the case was filed.

52.    Absent from many Registry Check reports provided by SafeRent are the results of the eviction filing; and Defendants do not seek those dispositions.

53.    Results of eviction filings are readily available to Defendants, either through the tenant screening services or can be found by them as a matter of public record.

54.    Defendants have also engaged Credit Information Center (CIC), at times, to do tenant screening.

55.    CIC provides nationwide commercial and residential screening products for landlords, realtors, property managers, and apartment owners.

56.    CIC reports eviction filings against housing seekers to JWB and JWB Capital.

57.    CIC does not report the disposition of the eviction complaints filed against applicants to JWB and JWB Capital nor do Defendants seek those dispositions.

58.     Results of the eviction filings are readily available to Defendants, either through the tenant screening services or can be found by them as a matter of public record.

59.     Plaintiff Byrd had an eviction filed in error against her on February 9, 2021, by her then landlord.

60.     Realizing its error, on February 11, 2021, Ms. Byrd's then landlord voluntarily dismissed its eviction complaint against Ms. Byrd and that complaint and docket have since been ordered by the court to be sealed from public view.

61.     Relying on the dismissal of the complaint and a letter provided by counsel for her former landlord which she provided to JWB, Plaintiff Byrd made an application for housing to JWB and paid the $150 dollar application fee for her household.

62.     In or around August 2022, she was denied housing by JWB due to the eviction filing.

63.     Plaintiffs Brooks and Moore live together and had an eviction filed against them on May 17, 2022, by their then landlord.

64.     That eviction was filed erroneously by their landlord, in that the allegations were not factually supported, and the complaint was legally deficient and ended in them remaining in possession, a dismissal with prejudice and the eviction case being sealed from public view by order of the court dated July 19, 2022.

65.    Relying on the dismissal of the complaint and complete resolution in their favor, and on the order sealing the case from the public's view, Plaintiffs Brooks and Moore applied for housing to JWB and paid their application fee of $150 dollars.

66.    On or around August 12, 2022, Plaintiffs Brooks and Moore were denied housing by JWB due to the eviction filing.

67.    Plaintiffs Brooks and Moore provided JWB documentation regarding the erroneously filed case, including court documents showing the dismissal and sealing of the file asking for reconsideration under these circumstances.

68.    They were told by an agent of JWB that, even though the case was dismissed and sealed, JWB maintained its denial of their applications based on the eviction filing.

69.    Plaintiff Lawson had a fire at her apartment causing her to apply for a new rental unit.

70.    On or around March 1, 2022, she made an application and paid $75 to JWB for a property.

71.    Plaintiff Lawson's application was denied due to an eviction filing against her.

72.    Plaintiff Lawson explained to an agent of JWB that she never had an eviction filing against her, that she had never lived at the address cited in the alleged eviction filing, that her name is legally Earnestine Leckeyccia Lawson and

provided JWB with a letter from the lawyer who sought the eviction for the housing provider explaining its mistake.

73.    Despite the mistaken identity and supporting documents provided, JWB maintained its denial of her application based on an artificial, arbitrary, and unnecessary barrier, that of a policy of rejecting all applicants with an eviction *filing* against them even where the filing was against a different individual who just happened to have a similar name.

74.    The prior eviction cases relied on by JWB to deny the plaintiff-applicants' applications for housing were all resolved in favor of plaintiffs, had no legally justifiable bearing on the Plaintiffs tenant worthiness, or flat out did not belong to Plaintiffs in the case of the same named "mixed files."

75.    JWB is an experienced property manager and JWB Capital is an experienced property owner in the Jacksonville community and in Duval County.

76.     In 2022 alone, JWB filed over 400 eviction cases in Duval County against its tenants.

77.    JWB and JWB Capital, both Florida corporations, are or should be aware that an eviction filing in County Court, without accounting for the disposition of the matter, is not an indicia of tenant worthiness.

78.    A review of the Duval County Court records shows, and upon information and belief, many eviction cases filed by JWB resulted in a dismissal by JWB, where no eviction judgment was entered by the court, and the tenants remained in possession.

79.     Agents of JWB and JWB Capital, both Florida corporations, are or should be aware that there are other potentially winning defenses a tenant may assert under Florida law in an eviction matter. See e.g., Chapter 83.64 (retaliation), Chapter 83.56(2)(a) (opportunity to cure), Chapter 83.60(1) (material non-compliance with rental agreement by landlord and lawful rent withholding) Chapter 83.56(2) (defective notice terminating tenancy) Chapter 83.56(2) (defective service of notice terminating tenancy) Chapter 83.60(2) (payment). See also    https://www.jwbrentalhomes.com/what-is-rent-withholding-for-renters/ (Last visited October 11, 2022.)

80.     These defenses are interposed *after* an eviction is filed with the court and *after* the eviction appears on the public court record and *after* the eviction complaint is served on the tenant.

81.     Agents of JWB and JWB Capital are or should be aware that eviction cases may be filed against tenants by their landlords in error.

82.     Such was also the case with Plaintiff's Brooks, Moore, and Byrd, where their former landlords filed cases against each of them despite having no legal basis to do so.

83.     Despite them providing JWB with this information each was told that JWB maintained its denial of their applications based on the eviction filings.

84.     Such was also the case with Plaintiff Lawson who had never lived at the address which was the subject matter of the eviction and was not the tenant

named in the lawsuit, it was, in fact, a different Earnestine Lawson that the landlord sought to evict.

85.    Despite Plaintiff Lawson providing JWB with this information she was told that JWB maintained its denial of her application based on the eviction filing.

86.    JWB and JWB Capital have full discretion to grant or deny housing to applicants.

87.    SafeRent Solutions and other tenant screening companies report to clients, such as JWB and JWB Capital, and pull information from a database of landlord-tenant records, which includes eviction filings and eviction judgments.

88.    JWB and JWB Capital have and maintain discretion to consider and give weight to those factors which they choose.

89.    SafeRent also makes a recommendation on acceptance or denial of a tenancy application based on something it calls a SafeRent Score.

90.    JWB and JWB Capital can accept or reject that recommendation and, upon information and belief, the criteria that SafeRent uses to establish the SafeRent Score is at the direction and request of Defendants.

91.    In the case of Ericka Byrd, for example, SafeRent recommended that JWB accept her as a tenant with conditions.

92.    JWB rejected that recommendation and denied Ms. Byrd's application, stating it was because she had had an eviction filed against her in the

last five years and without regard to the fact that she provided proof that the filing was mistaken.

93.    JWB's website explicitly addresses this stating "[w]hat would cause an automatic decline of my application? -Recent Evictions…" https://www.jwbrentalhomes.com/faqs/#squelch-taas-accordion-shortcode-content-1https://www.jwbrentalhomes.com/faqs/#squelch-taas-accordion-shortcode-content-1 (Last visited March 9, 2023.)

94.    JWB maintains what it calls its "Second Chance Program" whereby it retains discretion to take into consideration individual circumstances of a housing applicant.        https://www.jwbrentalhomes.com/faqs/#squelch-taas-accordion-shortcode-content-1 (Last visited March 9, 2023.)

95.    According to its website, JWB tries "to work with every applicant that applies with us. We understand the importance of housing for you and your family. If you do not meet the above criteria, or have questions, please call us at 904-737-0035   to   ask   about   our   Second   Chance   Program." https://www.jwbrentalhomes.com/faqs/#squelch-taas-accordion-shortcode-content-1 (Last visited January 24, 2023.)

96.    That language has recently been modified to state, "[w] e pride ourselves on trying to accommodate all applicants. If you do not meet any of the above criteria, please call us to discuss our Second Chance program." https://www.jwbrentalhomes.com/faqs/#squelch-taas-accordion-shortcode-content-1 (Last visited March 9, 2023.)

97.     Despite touting this program on its website, JWB refused to take individual circumstances into account in each of the plaintiffs' cases or do an individualized assessment in any of the plaintiffs' cases.

98.     Duval County census data also shows that the mean percentage of Black residents in all Duval County census tracts is 30.9%. 2020: ACS (American community survey) 5-year estimates.

99.     A census tract is a small, relatively permanent subdivision of a county or statistically equivalent entity ranging from 1,200 people to 8,000 people and usually covers a contiguous area.

100.    Mean percentage is the average of the numbers, expressed as percentages, they are added and are then divided by the number of data points.

101.    Duval County census data shows that the mean percentage of the "White-alone" population in Jacksonville, Duval County is 56.3%. https://www.census.gov/programs-surveys/geography/about/glossary.html#par_textimage_13 (Last visited November 21, 2022.)

102.    A review of census tracts containing JWB Capital properties in Duval County shows that approximately 89% of properties owned by JWB Capital are in census tracts with a mean percentage of Black population greater than the mean percentage of Black residents in Duval County of 30.9%.

103.    A review of census tracts containing JWB properties in Duval County shows that approximately 74% of properties managed by JWB are in census tracts

with a mean percentage Black population greater than the mean percentage of Black residents in Duval County of 30.9%.

104.   A review of census tracts containing JWB and JWB Capital properties in Duval County shows that approximately 82% of properties managed or owned by JWB or JWB Capital, respectively, are in census tracts with a mean percentage Black population greater than the mean percentage of Black residents in Duval County of 30.9%.

105.   Of those, 24% of properties are in census tracts that have a mean percentage Black population of approximately 50-60%.

106.   An additional 25% of those properties are in census tracts that have a mean percentage Black population of approximately 61% or greater.

107.   Thus, most of Defendants' properties are in neighborhoods that are in census tracts with a mean Black population percentage above or well above the mean percentage Black population in Duval County of 30.9%.

108.   Despite not being the majority population in Duval County, upon information and belief, most applicants for tenancy in properties managed or owned by JWB and JWB Capital, respectively, are Black.

109.   A review of a random sampling of eviction filings in Duval County Court in 2022 where race was either volunteered or could be imputed demonstrates that 71% of the defendants in eviction filings in that court are Black.

110.   In the last 6 months of 2022, about as many evictions were filed against renters in census tracts with a mean percentage Black population greater

than the mean percentage of Black residents in Duval County as renters in census tracts with a mean percentage White population greater than the mean percentage of White residents in Duval County despite the mean percentage Black population in Duval County of 30.9% versus the "White-alone" population in Jacksonville, Duval County of 56.3%. https://evictionlab.org/eviction-tracking/jacksonville-fl/ (Last visited January 24, 2023.)

111.   Accordingly, JWB and JWB Capital's blanket policy of using the bare existence of an eviction filing within the past five years, without regard to the outcome of the eviction case, as a tenant disqualifier from renting one of their properties disproportionately impacts Black applicants for tenancy in Duval County because most of Defendants' applicants are Black and many have eviction filings against them, however wrongful.

## CLASS ACTION ALLEGATIONS

112.   Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated as members of the class listed below:

> **Application Fee Class:** All Black rental applicants of JWB and JWB Capital in Duval County in the last 2 years who applied and paid an application fee but were denied housing because Defendants believed they had an eviction *filing* against them in the last 5 years, in which no judgment of eviction was entered against that applicant, or if a judgment was entered, it was vacated.

Collectively, the "Class."

113.    The Class Period for the Class begins two (2) years prior to the filing of the Complaint in this action and ends when this Court issues an Order approving Class Notice.

114.    Plaintiffs are unable to state the exact number of class members because that information is solely in the possession of Defendants.  However, Defendants utilize a standardized set of admissions criteria for all the properties they market and rent and, according to records that are publicly available, Defendants market, manage, own, or control, thousands of properties in Duval County, Florida, and a substantial portion of these come up for rent each year. As a result, Defendant accepts hundreds if not thousands of applications annually. Therefore, the putative Class is so numerous that joinder of all members would be impracticable.

115.    A review of Defendants' business records, particularly those relating to applications for tenancy, would allow the exact size of the putative class, as well as the names and addresses of all class members, to be easily ascertained. According to JWB and JWB Capital's Website it owns or manages 4,900 properties throughout the Jacksonville Metropolitan area.

116.    Questions of law and fact common to the Class exist and predominate any individualized issues, including: (a) whether Defendants' use of eviction filings to deny applicants housing without regard to the final disposition of the eviction case disproportionally disqualifies Black rental applicants; (b) whether such a

disparate impact can be justified by business necessity; (c) whether there are alternatives available that would have a less discriminatory impact; (d) whether the Defendants violated the Fair Housing Act, 42 U.S.C. § 3604 et seq.("Fair Housing Act"), through the above actions; (e) whether the members of the Class have sustained damages, and the measure of those damages.

117.   The claims alleged by the proposed class representative Plaintiffs are typical of the claims of the class because of Defendants standardized tenant selection criteria.

118.   Each proposed class representative Plaintiff identifies as Black and submitted a rental application for a vacant unit at a property managed or owned by JWB or JWB Capital.

119.   Each proposed class representative was denied rental housing due to, at least in part, Defendants' policy to disqualify applicants based on their having an eviction filing against them in the last 5 years without consideration of the disposition of that case, or whether a judgment existed against the applicant, and each class representative paid a non-refundable application fee and all representative Plaintiffs possess the same interest and have suffered the same injuries as each putative class member.

120.   The proposed class representative Plaintiffs will fairly and adequately represent and protect the interests of the Class.

121.   The proposed class representative Plaintiffs have no interests which conflict with those other housing seekers with JWB or JWB Capital who were

denied rental housing due to, at least in part, Defendants' policy to disqualify applicants based on their having an eviction filing against them in the last 5 years without consideration of the disposition of that case, or whether a judgment existed against the applicant, and adjudication of their claims will necessarily decide the identical issues for the other members of the Class. There is nothing peculiar about the Plaintiff representatives that would make them inadequate to act as Class representatives.

122.   Plaintiffs are represented by counsel experienced in class action litigation who will adequately represent the class.

123.   The class is certifiable under Federal Rule of Civil Procedure 23(b)(2) as to liability and injunctive relief, because Defendants have acted or refused to act on grounds generally applicable to each class, thereby making appropriate final injunctive relief or corresponding declarative relief with respect to each class as a whole.

124.   The class is certifiable under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to each class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this case because the expense and burden of litigation, and the practicality of each Class member seeking redress individually to recover their relatively modest application fee, would make it extremely difficult, if not impossible to obtained counsel to represent them on an individual basis.

125.   The majority of the Class members are also likely not aware that the Defendants' policies violate the Fair Housing Act, and a class action is the only way of adjudicating their rights.   Management of this litigation will not be difficult as Defendants use a standardized course of conduct during the application process and possess routine business records which will determine the Class membership and damages, namely the application fee paid by each member of the Class.

126.   Alternatively, class-wide liability under the theories advanced in this action are properly certified under Federal Rule of Civil Procedure 23(c)(4) because such claims present only common issues, the resolution of which would advance the interests of the parties in an efficient manner.

## CAUSE OF ACTION

## Fair Housing Act, 42 U.S.C. § 3604 et seq.

127.   Plaintiffs, on behalf of themselves and the proposed class, allege that the policies and practices of JWB and JWB Capital have a disproportionate adverse impact on Black rental applicants.

128.   This disproportionate impact is the direct result of a policy which automatically disqualifies housing applicants based on an eviction filing against them in the last 5 years without regard to the outcome of those eviction filings and using that criterion as a false indicia of tenant worthiness.

129.   JWB and JWB Capital's properties are in predominantly Black neighborhoods in Duval County, specifically approximately 89% of properties

owned by JWB Capital are in census tracts with a mean Black population greater than 30.9% which is the mean Black population of Duval County.

130.   In addition, approximately 71% of the eviction filings in the Duval County Courthouse, the courthouse where Duval County based eviction cases are filed, are against Black tenants and the same is true nationwide, thus more Blacks than Whites are affected by the policy and the policy has and will continue to have an adverse and disparate impact on Black renters in Duval County, Florida.

131.   This disparate impact cannot be justified by business necessity with respect to the housing seekers who comprise the proposed plaintiff class.

132.   Although Black renters have disproportionately greater numbers of eviction filings against them in Duval County and nationwide than their White counterparts, these filings alone do not reflect a renter's potential lease or tenancy performance especially when not accounting for the disposition of the cases that were filed.

133.   There are less discriminatory alternatives available that could be used for screening tenants that would, in fact, be indicia of tenant worthiness.

134.   Defendant's policies and practices are unlawful discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3604, by making housing unavailable based on race in violation of 42 U.S.C. § 3604(a); and by providing different terms and conditions and discriminating in the provision of services in connection with housing based on race in violation of 42 U.S.C. § 3604(b).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request judgment against

Defendants as follows:

(1)    Certification of the class and to proceed as class action under Federal

Rule of Civil Procedure 23(b)(2) and (b)(3), and designation of the named

plaintiffs as class representatives and recognize undersigned as Class

Counsel;

(2)    Declaring Defendants' discriminatory practices violate the Fair

Housing Act, as amended, 42 U.S.C. § 3601 et seq.;

(3)    Enjoining Defendants, Defendants' agents, employees and

successors, and all other persons in active concert or participation     from

withholding housing, or otherwise making housing unavailable based on

race;

(4)    Enjoining Defendants' agents, employees and successors, and all

other persons in active concert or participation     from abetting, inciting,

compelling, or coercing the doing of any of the   acts   forbidden   by   the

federal Fair Housing Act;

(5)    Enjoining Defendants and their agents, employees, and successors,

and all other persons in active concert or participation to: a. Make all

necessary modifications to their policies, practices, and procedures to

comply with fair housing laws; b. Train all management, agents, and

employees on fair housing laws; and, c. Monitor tenant screening outcome

data used in decision making regarding applicants for tenancy to prevent discrimination against Black applicants;

(6)     Awarding damages that Plaintiffs, including the plaintiff class have sustained because of Defendants' conduct on the amount of $75 per person or up to $150 per household or in whatever amount that was charged as the non-refundable application fee;

(7)     Awarding Plaintiffs reasonable attorneys' fees, costs and expenses incurred in prosecuting this action; and Granting Plaintiffs such other further relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial on the merits by jury.

By:  */s/ Suzanne Garrow*
Suzanne Garrow *(Lead Counsel)*
Fla. Bar No.: 122184
Jacksonville Area Legal Aid
126 West Adams Street
Jacksonville, FL 32202
(904) 356-8371 Ext. 374
(904) 405-1976 Fax and Direct dial
suzanne.garrow@jaxleglalaid.org

*/s/ Adam Thoresen*
Adam Thoresen
Fla. Bar No.: 57675
Jacksonville Area Legal Aid
126 West Adams Street
Jacksonville, FL 32202
(904) 356-8371 Ext.
(904) Fax and Direct dial
adam.thoresen@jaxleglalaid.org