**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

Case No. 3:23-cv-00266-BJD-JBT

ERICKA M. BYRD, KEMONE
BROOKS, QUANTEZ MOORE, and
EARNESTINE LAWSON, on behalf
of themselves and on behalf of others
who are similarly situated,

      Plaintiffs,

v.

JWB PROPERTY MANAGEMENT,
LLC and JWB REAL ESTATE
CAPITAL, LLC,

      Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED**
**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**
**[DOC. 20] WITH PREJUDICE PURSUANT TO FEDERAL RULE**
**OF CIVIL PROCEDURE 12(b)(6), AND DEFENDANTS'**
**INCORPORATED MEMORANDUM OF LAW**

Defendants, JWB PROPERTY MANAGEMENT, LLC and JWB REAL

ESTATE CAPITAL, LLC, by and through their undersigned attorneys, and pursuant

to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01, hereby file their

*Motion to Dismiss Plaintiffs' First Amended Class Action Complaint and Demand*

*for Jury Trial [Doc. 20] with Prejudice Pursuant to Federal Rule of Civil Procedure*

*12(b)(6), and Defendants' Incorporated Memorandum of Law* (this "Motion"), and

1

thereby request this Court to dismiss Plaintiffs, ERICKA M. BYRD, KEMONE BROOKS, QUANTEZ MOORE, and EARNESTINE LAWSON'S, sole claim brought against Defendants in Plaintiffs' *First Amended Class Action Complaint and Demand for Jury Trial* [Doc. 20] (the "Amended Complaint") because Plaintiffs have failed to state a claim upon which relief can be granted against Defendants and providing Plaintiffs an opportunity to further amend their claim would be futile. In support of this Motion, Defendants state as follows:

## I. INTRODUCTION

In the Amended Complaint, Plaintiffs have brought a single discriminatory-impact (or disparate-impact) claim against Defendants under the Fair Housing Act, 42 U.S.C. § 3604, *et seq.* (the "FHA"). (*See* Doc. 20, pp. 30-33). Plaintiffs allege that Defendants "own, operate, lease and advertise for rental" "over 4,900 rental properties in Jacksonville." (*See id.* at paras. 6, 38). Plaintiffs, who are Black and had prior eviction filings against them, allegedly attempted to rent houses from Defendants and were denied housing by Defendants based upon Defendants' facially-neutral policy of denying tenant applicants who had a prior eviction filing against them in the past four to five years (the "Eviction Policy"). (*See id.* at paras. 26-33, 141).

Plaintiffs' discriminatory-impact claim against Defendants can be summarized (in Plaintiffs' own words) in one sentence:

2

> Accordingly, [Defendants'] blanket policy of using the bare existence of an eviction filing within the past four-five years, without regard to the outcome of the eviction case, as a tenant deterrer or disqualifier from renting one of their properties disproportionately impacts Black applicants for tenancy in Duval County because Black applicants are more likely to have eviction filings against them.

(Doc. 20, para. 124). Thus, Plaintiffs posit that Defendants' implementation and application of the Eviction Policy is a violation of the FHA because, according to Plaintiffs, more evictions are filed against Black residents of Duval County, Florida ("Duval County") based upon "a **review** of a **<u>random sampling</u>** of eviction filings in Duval County Court in 2022 **where race was either volunteered <u>or could be imputed</u>**", which purportedly demonstrates "that 71% of the defendants in eviction filings in that court are Black". (*See id.* at paras. 122, 124) (emphasis added).

However, Plaintiffs have totally missed the mark in the Amended Complaint by <u>inaccurately equating correlation and causation</u>. It is axiomatic that "<u>correlation does not equal causation</u>." *See Kuhl v. Unknown Claimant(s)*, No. 22-13862, 2023 WL 3734284, at *3 (11th Cir. May 31, 2023). Yet Plaintiffs spent thirty-three pages in the Amended Complaint attempting to state a claim that requires proof of <u>causation</u> but only ended up alleging <u>correlation</u>. And for Plaintiffs, the foregoing axiom is fatal to their discriminatory-impact claim against Defendants because Plaintiffs have failed to sufficiently allege factual allegations or statistical evidence that demonstrates that Defendants' Eviction Policy has <u>caused an actionable</u>

"discriminatory effect" in the geographical areas where Defendants apply the Eviction Policy and provide housing, which is necessary to adequately state a *prima facie* discriminatory-impact claim under the FHA.

Plaintiffs' allegations (accepted as true) merely demonstrate two things: (1) Defendants implement a blanket (i.e., applied to Black and non-Black tenant applicants alike), facially-neutral policy of denying prospective tenants housing based upon prior eviction filings, i.e., the Eviction Policy; and (2) the Eviction Policy is statistically more likely to apply to Black tenant applicants than non-Black tenant applicants because Black tenant applicants are statistically more likely to have an eviction filing against them in Duval County.

Thus, Plaintiffs have only alleged in the Amended Complaint that the Eviction Policy is statistically more likely to apply to Black tenant applicants than non-Black tenant applicants, i.e., <u>correlation</u>. However, Plaintiffs have failed to allege (despite being required to do so) that the Eviction Policy has <u>caused an actionable "discriminatory effect"</u>, i.e., either (1) a segregative effect or (2) a disparate-impact that makes housing options <u>significantly more restrictive</u> for members of a protected group than for persons outside that group, in the geographical areas where Defendants apply the Eviction Policy and provide housing. **In fact, Plaintiffs have not even alleged in the Amended Complaint (as they must) the existence of an actionable "discriminatory effect" in the geographical areas where Defendants**

**apply the Eviction Policy and provide housing (let alone that the Eviction Policy <u>caused</u> an actionable "discriminatory effect" in the geographical areas where Defendants apply the Eviction Policy and provide housing).**

Even more baffling are the statistics cited by Plaintiffs in the Amended Complaint, which completely refute Plaintiffs' claim that Defendants' Eviction Policy has had a discriminatory impact on Black rental applicants. In the Amended Complaint, Plaintiffs cite statistics that demonstrate that 82% of Defendants' 4,900 rental properties are located in geographical areas with Black populations that are above average compared to the overall Black population in Duval County in general. (*See* Doc. 20, paras. 113-119, 143). **Literally, Plaintiffs have alleged that Defendants have caused a "disproportionate adverse impact on Black rental applicants", while acknowledging and affirmatively alleging that Defendants apply the Eviction Policy <u>and provide thousands of rental properties in geographical areas with an above-average Black population compared to Duval County in general</u>.** (*See id.* at paras. 113-119, 140, 143).

Based upon Plaintiffs' cited statistics in the Amended Complaint, the only way that Plaintiffs can somehow show that Defendants' Eviction Policy is causing an actionable "discriminatory effect" <u>in geographical areas that already have above-average Black populations compared to Duval County in general</u> is for Plaintiffs to allege and ultimately prove that the racial composition of Defendants' tenants is

disproportionately non-Black compared to the total population of renters in the geographical areas where Defendants are applying the Eviction Policy and providing housing. However, Plaintiffs have not and cannot make such an allegation as they have no proof of the same. (*See* Doc. 20, *passim*). Furthermore, Plaintiffs have admitted that "[d]espite not being the majority population in Duval County, upon information and belief, many applicants for tenancy in properties managed or owned by JWB and JWB Capital, respectively, are Black." (*Id.* at para. 119).

All Plaintiffs have done by bringing this case is allege a meritless FHA claim based upon <u>correlation</u> (i.e., the Eviction Policy is statistically more likely to apply to Black tenant applicants than non-Black tenant applicants) when the burden that Plaintiffs bear is to allege and, ultimately prove, <u>causation</u> (i.e., the Eviction Policy has caused a "discriminatory effect" on Black tenant applicants). Consequently, this Court should dismiss, with prejudice, Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted against Defendants because Plaintiffs have not alleged and cannot allege that the Eviction Policy has <u>caused an actionable "discriminatory effect"</u>.

## II. PERTINENT PROCEDURAL BACKGROUND

On November 6, 2023, Plaintiffs filed the Amended Complaint. Thereby, Plaintiffs brought a single claim against Defendants for allegedly violating the FHA. (*See* Doc. 20, *passim*).

6

On December 12, 2023, this Court entered its *Endorsed Order* [Doc. 22]. Thereby, this Court granted Defendants leave to file their response to the Amended Complaint by December 15, 2023. Thus, Defendants have timely filed this Motion.

Now, Defendants are hereby moving to dismiss the Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state a claim upon which relief can be granted against Defendants and allowing Plaintiffs a chance to amend their claim would be futile. (*See* Sec. III *infra*).

## III. ARGUMENT

### A. Motion-to-Dismiss Standard under Federal Rule of Civil Procedure 12(b)(6):

"Rule 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. Furthermore, they must accept all factual allegations contained in the complaint as true and view the facts in a light most favorable to the plaintiff." *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, 489 F. Supp. 3d 1303, 1306 (M.D. Fla. 2020) (internal citations omitted).

"Legal conclusions, though, are not entitled to the assumption of truth. In fact, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. To survive a motion to dismiss, a

complaint must instead contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. This plausibility standard is met when the plaintiff pleads enough factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations and quotation marks omitted). Also, "[a] district court need not, however, allow an amendment … where amendment would be futile." *Bryant v. Dupree*, 252 F. 3d 1161, 1163 (11th Cir. 2001).

**B.     Plaintiffs <u>Must</u> Allege that Defendants' Eviction Policy <u>Caused a "Discriminatory Effect"</u> to State a *Prima Facie* Discriminatory-Impact Claim under the FHA.**

1.     <u>Plaintiffs' Claim under the FHA Is a Discriminatory-Impact Claim.</u>

"In order to prevail on a claim under the FHA, a plaintiff must demonstrate unequal treatment on the basis of race that affects the availability of housing. A plaintiff can establish a violation under the FHA by proving (1) intentional discrimination, (2) discriminatory impact, or (3) a refusal to make a reasonable accommodation." *E.g., Bonasera v. City of Norcross*, 342 F. App'x 581, 583 (11th Cir. 2009) (internal quotation marks and citations omitted).

In this case, Plaintiffs have <u>not</u> alleged that Defendants have engaged in intentional discrimination or have refused to make a reasonable accommodation. (*See* Doc. 20, *passim*). Rather, Plaintiffs have alleged that Defendants' policies and practices have a "disproportionate adverse impact on Black rental applicants." (*See*

Doc. 20, paras. 140-141). Thus, Plaintiffs' claim under the FHA is based upon a purported "discriminatory impact".

> 2. Plaintiffs Must Allege a "Significant Discriminatory Effect" to State a *Prima Facie* Discriminatory-Impact Claim under the FHA.

In the Eleventh Circuit, Courts have consistently held that "a showing of **significant discriminatory effect** suffices to demonstrate a *prima facie* violation of the Fair Housing Act." *Hallmark Devs., Inc. v. Fulton Cnty., Ga.*, 466 F.3d 1276, 1286 (11th Cir. 2006) (emphasis added); *see also Schaw v. Habitat for Human. of Citrus Cnty., Inc.*, 938 F. 3d 1259, 1274 (11th Cir. 2019) (same); *Oviedo Town Ctr. II, L.L.L.P. v. City of Oviedo, Fla.*, 759 F. App'x 828, 833 (11th Cir. 2018) (same); *Bonasera v. City of Norcross*, 342 F. App'x 581, 585 (11th Cir. 2009) (same); *River Cross Land Co., LLC v. Seminole Cnty.*, No. 6:18-CV-1646-ACC-LRH, 2021 WL 2291344, at *21 (M.D. Fla. June 4, 2021) (same); *Scopelliti v. City of Tampa*, No. 8:14-CV-949-MSS-TGW, 2015 WL 13333497, at *5 (M.D. Fla. Nov. 6, 2015) (same); *Roy v. Bd. of Cnty. Commissioners Walton Cnty.*, No. 3:06CV95/MCR/EMT, 2007 WL 9736174, at *13 (N.D. Fla. Mar. 20, 2007) (same).

Also, other federal circuits have held that FHA plaintiffs must allege a "**significant discriminatory effect**" to state a discriminatory-impact claim under the FHA. *See Fair Hous. in Huntington Comm. Inc. v. Town of Huntington, N.Y.*, 316 F. 3d 357, 366 (2d Cir. 2003) ("In order to make out a prima facie case under the FHA on a theory of disparate impact, a plaintiff must demonstrate that an outwardly

neutral practice actually or predictably has a discriminatory effect; that is, has a **significantly adverse or disproportionate impact on minorities**, or perpetuates segregation.") (emphasis added); *Gamble v. City of Escondido*, 104 F. 3d 300, 306 (9th Cir. 1997) ("To establish a prima facie disparate impact case, a plaintiff must establish at least that the defendant's actions had a discriminatory effect…. Demonstration of discriminatory intent is not required under disparate impact theory. However, a plaintiff must prove the discriminatory impact at issue; **raising an inference of discriminatory impact is insufficient.**") (internal citations and quotation marks omitted) (emphasis added).

"A plaintiff can demonstrate a discriminatory effect in two ways: [1] it can demonstrate that the decision has a segregative effect or [2] that it makes housing options **significantly more restrictive** for members of a protected group than for persons outside that group." *Hallmark*, 466 F. 3d at 1286 (emphasis added); *see also Schaw*, 938 F. 3d at 1274 (same); *Oviedo*, 759 F. App'x at 833 (same); *Bonasera*, 342 F. App'x at 585 (same); *River Cross*, 2021 WL 2291344, at *21 (same); *Scopelliti*, 2015 WL 13333497, at *5 (same); *Roy*, 2007 WL 9736174, at *13 ("To properly allege disparate impact, a plaintiff must show one of two things: (1) the decision has a segregative effect or (2) the decision makes housing options significantly more restrictive for members of a protected group than for persons outside the group.").

3.    <u>Plaintiffs Must Also Satisfy the "Robust Causality Requirement" by Alleging Sufficient Facts or Statistics that Demonstrate that Defendants' Eviction Policy Caused a "Discriminatory Effect" to State a *Prima Facie* Discriminatory-Impact Claim under the FHA.</u>

"[A] disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies **causing that disparity**. **A robust causality requirement ensures that racial imbalance ... does not, without more, establish a prima facie case of disparate impact and thus protects defendants from being held liable for racial disparities they did not create**." *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542, 135 S. Ct. 2507, 2523, 192 L. Ed. 2d 514 (2015) (internal quotation marks and citations omitted). "**Courts must therefore examine with care whether a plaintiff has made out a prima facie case of disparate impact and prompt resolution of these cases is important. <u>A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact</u>**." *Id.*

Accordingly, it is not enough for FHA plaintiffs to provide statistics that simply show that a facially-neutral policy applies to and affects more persons of a protected group than a nonprotected group. Rather, the statistics must demonstrate a causal connection between the facially-neutral policy and a "discriminatory effect". Comparative statistical evidence, i.e., statistical evidence that compares the affected protected group to the unaffected nonprotected group, is critical to demonstrating

causation in discriminatory-impact claims under the FHA. *See Scopelliti v. City of Tampa*, No. 8:14-CV-949-MSS-TGW, 2015 WL 13333497, at *5–6 (M.D. Fla. Nov. 6, 2015) ("Typically, a disparate impact is demonstrated by statistics. Plaintiffs have not presented any statistical evidence showing the effect of the City's code enforcement efforts on African-Americans as opposed to any other race. In fact, Plaintiffs have not presented any comparative data at all. Rather, they proceed on the theory that because the City enforced its Code at GreenPark and the residents of GreenPark were almost exclusively African-American, the code enforcement necessarily had a disparate impact on African-Americans. It is well-settled, however, that 'simply showing that a few houses are affected by an ordinance does not come close to establishing disparate impact.' *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218 (11th Cir. 2008) (affirming the district court's grant of summary judgment on plaintiff's FHA disparate impact claim because plaintiff presented no comparative evidence of discrimination against handicapped individuals, instead 'relying instead on the bald assumption that because the halfway houses at issue in this case cannot be used for short-term group living, the occupancy-turnover rule must necessarily create a disparate impact on the handicapped.'). **A plaintiff who fails to present relevant comparative evidence fails to establish a prima facie case**. (citing *Gamble v. City of Escondido*, 104 F. 3d 300, 306 (9th Cir. 1997) ('Gamble fails to establish a prima facie case because he has presented no statistics

or other proof demonstrating that the City's permit practices have a significantly adverse or disproportionate impact on the physically disabled or elderly.')); *see also Tsombanidis v. W. Haven Fire Dep't*, 352 F. 3d 565, 574-78 (2d Cir. 2003) (failure to establish statistical case or any qualitative comparison between populations insufficient to show FHA violation); *United States v. Nichols*, 512 F. 3d 789, 795 (6th Cir. 2008) ('bald accusations and irrelevant generalized statistics do not even come close to constituting' a prima facie case of equal protection violation).") (emphasis added).

**C.    This Court Should Dismiss the Amended Complaint with Prejudice because Plaintiffs Have Failed to and Cannot Allege that the Eviction Policy has Caused a "Discriminatory Effect".**

Plaintiffs have taken an overly simplistic view of the FHA and applied it in a superficial way. That is, Plaintiffs have alleged that Defendants must be in violation of the FHA simply because (1) Defendants applied the facially-neutral Eviction Policy to all of its tenant applicants (i.e., to Defendants' Black and non-Black tenant applicants alike), and (2) the Eviction Policy is statistically more likely to apply to Black tenant applicants than non-Black tenant applicants.

However, that is not what is required to allege a *prima facie* discriminatory-impact claim under the FHA. Rather, Plaintiffs, through statistical evidence, must demonstrate that the Eviction Policy has caused a "discriminatory effect", i.e., (1) a segregative effect, or (2) a disparate impact that makes housing options significantly

<u>more restrictive</u> for members of a protected group than for persons outside that group.

**In the Amended Complaint, Plaintiffs have failed to state a claim upon which relief can be granted against Defendants because Plaintiffs (1) have <u>not</u> alleged the existence of a "discriminatory effect" in the geographical areas where Defendants apply the Eviction Policy and provide housing, <u>and</u> (2) Plaintiffs have <u>not</u> alleged that the Eviction Policy has <u>caused</u> a "discriminatory effect" in the geographical areas where Defendants apply the Eviction Policy and provide housing.**

      1.   <u>Plaintiffs Have Not Alleged the Existence of a "Discriminatory Effect" in the Subject Geographical Areas Based upon a Segregative Effect.</u>

"Segregative-effect claims focus on how a challenged action affects residential segregation in the local community." *River Cross Land Co., LLC v. Seminole Cnty.*, No. 6:18-CV-1646-ACC-LRH, 2021 WL 2291344, at *21 (M.D. Fla. June 4, 2021). In the Amended Complaint, Plaintiffs have failed to allege that a segregative effect exists in the geographical areas where Defendants apply the Eviction Policy and provide housing.

Plaintiffs have failed to make any allegations in the Amended Complaint about "segregation" or "segragative effect". (*See* Doc. 20, *passim*). Moreover, Plaintiffs cannot make any such allegations about segregation in the geographical areas where Defendants apply the Eviction Policy and provide housing because

Plaintiffs have admitted in the Amended Complaint that "approximately 82% of properties managed or owned by JWB or JWB Capital, respectively, are in census tracts with a mean percentage Black population greater than the mean percentage of Black residents in Duval County of 30.9%." (Doc. 20, para. 115).

Thus, Defendants' Eviction Policy, according to Plaintiffs themselves, has not caused a segregative effect in the geographical areas in which Defendants apply the Eviction Policy and provide housing. To the contrary, Defendants apply the Eviction Policy and provide housing in geographical areas with an above-average Black population compared to Duval County in general. (*See id.* at para. 115).

2.   Plaintiffs Have Not Alleged the Existence of a "Discriminatory Effect" in the Subject Geographical Areas Based upon Disparate Impact.

"'[D]isparate impact' claims [focus] on the harm done to a racial minority or protected group." *River Cross Land Co., LLC v. Seminole Cnty.*, No. 6:18-CV-1646-ACC-LRH, 2021 WL 2291344, at *21 (M.D. Fla. June 4, 2021). In the Amended Complaint, Plaintiffs fail to allege that a disparate impact (i.e., **significantly more restrictive** housing options for members of a protected group than for persons outside that group) exists in the geographical areas where Defendants apply the Eviction Policy and provide housing.

Again, an actionable "discriminatory effect" under the FHA, which Plaintiffs must allege to state a *prima facie* disparate-impact claim, is one that makes housing options "**significantly more restrictive**" for members of a protected group than for

15

persons outside that group. *See, e.g., Hallmark*, 466 F.3d at 1286. In this case, Plaintiffs must allege (but have not) that housing options are "significantly more restrictive" for Black tenant applicants than non-Black tenant applicants in the geographical areas where Defendants apply the Eviction Policy and provide housing.

The closest Plaintiffs come to alleging the existence of an actionable "discriminatory effect" based upon disparate impact is by vaguely and in conclusory fashion alleging that the Eviction Policy "has a chilling effect and results in deterrence or denials of applications for otherwise qualified Black housing seekers." (Doc. 20, para. 142). This is insufficient because Plaintiffs provide no statistics or factual allegations that demonstrate the degree (or significance) to which Defendants' Eviction Policy chills or deters "Black housing seekers" from obtaining housing. *Schaw v. Habitat for Human. of Citrus Cnty., Inc.*, 938 F.3d 1259, 1274 (11th Cir. 2019) ("That said, it's not enough to show that a few people are affected by a policy—rather, the disparity must be substantial enough to raise an inference of causation."); *Scopelliti v. City of Tampa*, No. 8:14-CV-949-MSS-TGW, 2015 WL 13333497, at *5 (M.D. Fla. Nov. 6, 2015) ("It is well-settled, however, that simply showing that a few houses are affected by an ordinance does not come close to establishing disparate impact.") (internal quotations marks omitted). Moreover, Plaintiffs do not allege in which geographical area the "chilling effect" is being experienced, e.g., in Duval County as a whole, in the geographical areas where

16

Defendants operate, or somewhere else. Plaintiffs fail to even allege that housing options for "Black housing seekers" in the geographical areas in which Defendants operate are more restrictive (let alone "significantly more restrictive") than geographical areas where Defendants do not operate.

Plaintiffs must, at the very least, allege the mere existence of an actionable "discriminatory effect", i.e., housing options are "significantly more restrictive" for Black tenant applicants than non-Black tenant applicants in the geographical areas where Defendants apply the Eviction Policy and provide housing. Defendants nebulous and conclusory allegation that there has been a "chilling effect" as a result of the Eviction Policy is not enough. *See Infinity Exhibits, Inc.*, 489 F. Supp. 3d at 1306. Thus, Plaintiffs have failed to allege the existence a "discriminatory effect" based upon a disparate impact in the geographical areas in which Defendants apply the Eviction Policy and provide housing.

     3.    <u>Plaintiffs Have Not Satisfied the "Robust Causality Requirement" as Plaintiffs Have Failed to Allege Factual Allegations or Statistical Evidence that Demonstrate that the Eviction Policy Has Caused a "Discriminatory Effect".</u>

At the outset, Plaintiffs cannot satisfy the "robust causality requirement" because, again, Plaintiffs have not even alleged that an actionable "discriminatory effect" exists in the geographical areas where Defendants apply the Eviction Policy and provide housing. (*See* Secs. III(C)(1)-(2) *infra*). That alone subjects the Amended Complaint to dismissal.

Ironically, Plaintiffs' putative statistics and factual allegations in the Amended Complaint totally undermine any claim that Defendants' Eviction Policy is causing a "discriminatory effect" in the geographical areas where Defendants apply the Eviction Policy and provide housing. (*See* Doc. 20, paras. 113-119). Plaintiffs have alleged that Defendants have "over 4,900 rental properties in Jacksonville." (*Id.* at 128). Plaintiffs have alleged that the over 4,900 rental properties that Defendants "own, operate, lease and advertise for rental" "are located in census tracts that are predominately [B]lack or contain a higher percentage of [B]lack residents than Duval County as a whole per the U.S. Census Bureau 2020 Census." (*Id.* at para. 6). Specifically, Plaintiffs have alleged that "approximately 82% of properties managed or owned by JWB or JWB Capital, respectively, are in census tracts with a mean percentage Black population greater than the mean percentage of Black residents in Duval County of 30.9%." (*Id.* at para. 115).

Utilizing Plaintiffs' own statistics, Defendants' Eviction Policy has clearly <u>not caused</u> a "discriminatory effect" as 82% of Defendants' 4,900 rental properties are in geographical areas with an above-average Black population compared to Duval County in general. This reality begs the following question: How can Plaintiffs allege (let alone demonstrate) that the Eviction Policy makes housing options <u>significantly more restrictive</u> for Black tenant applicants than non-Black tenant applicants when Defendants apply the Eviction Policy and provide housing in

geographical areas of Duval County that have higher-than-average Black populations?

The only conceivable way that Plaintiffs can allege and demonstrate a "discriminatory effect" under these circumstances would be to allege that, despite Defendants providing thousands of housing options in geographical areas with higher-than-average Black populations compared to Duval County in general, Defendants still rent to more non-Black tenant applicants than Black tenant applicants because of the Eviction Policy. Otherwise, Plaintiffs cannot demonstrate that the Eviction Policy has caused a "discriminatory effect" because Defendants are supplying thousands of housing options in geographical areas with higher-than-average Black populations based upon Plaintiffs' own statistics.

Plaintiffs have not and cannot allege that Defendants rent to more non-Black tenant applicants than Black tenant applicants because of the of Eviction Policy. Plaintiffs have even admitted that "[d]espite not being the majority population in Duval County, upon information and belief, many applicants for tenancy in properties managed or owned by JWB and JWB Capital, respectively, are Black." (Doc. 20, para. 119).

Plaintiffs only allege that the Eviction Policy is statistically more likely to apply to Black tenant applicants than non-Black tenant applicants because there is allegedly a higher statistical chance that a Black tenant applicant in Duval County

has had an eviction filing against him/her than a non-Black tenant applicant in Duval County. And Plaintiffs statistical basis for the foregoing conclusion is based upon a highly dubious and likely inadmissible "**review** of a **<u>random sampling</u>** of eviction filings in Duval County Court in 2022 **where race was either volunteered <u>or could be imputed</u>**". (Doc. 20, para. 122). How the creators of the "random sampling" have "imputed" other people's race is a mystery to Defendants.

Nonetheless, the foregoing does not satisfy the "robust causality requirement" required for discriminatory-impact claims under the FHA. All the foregoing can show (assuming it is true) is that the Eviction Policy, statistically speaking, is more likely to apply to Black tenant applicants than non-Black tenant applicants. However, the foregoing does not show that the Eviction Policy <u>has caused an actionable "discriminatory effect"</u>, i.e., a segregative effect or a disparate impact, in the geographical areas in which Defendants apply the Eviction Policy and provide housing because the alleged statistical likelihood of the Eviction Policy applying more to Black tenant applicants does <u>not</u> demonstrate that the housing options in the geographical areas where Defendants apply the Eviction Policy and provide housing (1) has experienced a segregative effect or (2) has <u>significantly more restrictive</u> housing options for Black tenant applicants than non-Black tenant applicants.

Plaintiffs have failed to allege any statistical evidence in the Amended Complaint that demonstrates that the Eviction policy has <u>caused</u> either (1) the

20

existence of a segregative effect in the geographical areas where Defendants apply the Eviction Policy and provide housing, or (2) a significantly higher restriction on housing options for Black tenant applicants than non-Black tenant applicants in the geographical areas where Defendants apply the Eviction Policy and provide housing. *See Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542, 135 S. Ct. 2507, 2523, 192 L. Ed. 2d 514 (2015) ("Courts must therefore examine with care whether a plaintiff has made out a prima facie case of disparate impact and prompt resolution of these cases is important. A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact.") (internal quotation marks and citations omitted). This insufficiency, in and of itself, warrants dismissal of the Amended Complaint.

Also and again, Plaintiffs have not even alleged in the Amended Complaint the mere existence of (1) a segregative effect in the geographical areas where Defendants apply the Eviction Policy and provide housing (*see* Sec. III(C)(1) *infra*), or (2) a significantly higher restriction on housing options for Black tenant applicants than non-Black tenant applicants in the geographical areas where Defendants apply the Eviction Policy and provide housing (*see* Sec. III(C)(2) *infra*). This insufficiency, in and of itself, warrants dismissal of the Amended Complaint.

Accordingly, Plaintiffs have not and cannot allege that the Eviction Policy has caused a "discriminatory effect" in the geographical areas where Defendants apply the Eviction Policy and provide housing. Additionally, Plaintiffs have not and cannot allege the mere existence of a "discriminatory effect" in the geographical areas where Defendants apply the Eviction Policy and provide housing. Consequently, this Court should dismiss the Amended Complaint with prejudice.

## IV. CONCLUSION

WHEREFORE, Defendants, JWB PROPERTY MANAGEMENT, LLC and JWB REAL ESTATE CAPITAL, LLC, hereby request this Court to enter an order that (1) grants this Motion, (2) finds that Plaintiffs, ERICKA M. BYRD, KEMONE BROOKS, QUANTEZ MOORE, and EARNESTINE LAWSON, have failed to state a claim in the Amended Complaint upon which relief can be granted against Defendants and that allowing Plaintiffs an opportunity to amend their claim would be futile, (3) dismisses the Amended Complaint with prejudice, and (4) grants Defendants any other relief that this Court deems just or proper.

## V. LOCAL RULE 3.01(g) CERTIFICATION

The undersigned hereby certifies that he conferred with Plaintiffs' counsel via an in-person meeting on December 7, 2023, and via email on December 14, 2023, in a good-faith effort to resolve this Motion. However, the parties were unable to agree on a resolution of this Motion.

Filed this 15th day of December 2023.

/s/ Michael D. Piccolo
**Rebecca E. Rhoden**
Florida Bar No. 0019148
**Michael D. Piccolo**
Florida Bar No. 1003505
**Lowndes, Drosdick, Doster, Kantor & Reed, P.A.**
215 North Eola Drive
Orlando, Florida 32802-2809
Telephone: (407) 843-4600
rebecca.rhoden@lowndes-law.com
michael.piccolo@lowndes-law.com
tina.althoff@lowndes-law.com
litcontrol@lowndes-law.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of December 2023, a true and correct copy of the foregoing was electronically filed with this Court and served on all attorneys of record.

/s/ Michael D. Piccolo
**Michael D. Piccolo**