IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Jacksonville Division

ERICKA M. BYRD, KEMONE BROOKS,
QUANTEZ MOORE, and
EARNESTINE LAWSON, on behalf of
themselves and on behalf of others
who are similarly situated,   Case No.: 3:23-cv-00266-WWB-JBT
    Plaintiffs

v.

JWB PROPERTY MANAGEMENT, LLC and
JWB REAL ESTATE CAPITAL, LLC
    Defendants.

**PLAINTIFFS' SECOND MOTION TO COMPEL COMPLETE RESPONSES
TO PLAINTIFFS' FIRST REQUESTS FOR
PRODUCTION OF DOUMENTS TO DEFENDANTS
AND FOR SANCTIONS**

Plaintiffs, pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 3.01(g), move the Court to compel Defendants, JWB Property Management LLC, and JWB Real Estate Capital (collectively "JWB") to serve complete responses and produce responsive documents to Plaintiffs' First Requests for Production of Document and for sanctions for failure to abide by the Court's order and in support therefore states:

**Factual Background**

A full recitation of the relevant procedure was set forth in Plaintiffs' First Motion to Compel Complete Responses to Plaintiffs' First Requests for Production of Documents to Defendants. (Doc #27.) Most relevant here is that on November 6, 2023, Plaintiffs filed their First Amended Complaint. (Doc. # 20.) Plaintiffs allege that Defendants violated the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. ("FHA") on both a class and individual basis.  Plaintiffs seek to vindicate the rights of Black housing applicants in Jacksonville,

Florida who are deterred and denied from housing and are disparately impacted by Defendants' tenant screening policy which bars them from tenancy at rental housing owned, managed, controlled, or leased by Defendants based on a screening criterion that is not an indicia of tenant worthiness. That criterion is the mere *filing* of an eviction complaint against them.

On December 21, 2023, (Doc. #29), the Court entered an Amended Case Management and Scheduling Order moving the deadline for Plaintiffs to provide their expert report until May 20, 2024, and the close of discovery to August 23, 2024. Both dates, which require the documents in question, are coming soon. Also around that time this case was reassigned.

Worthy of mention is that the documents that are the subject of this Second Motion to Compel and for Sanctions were first requested on June 27, 2023. On July 28, 2023, counsel for Plaintiffs contacted Defendants' counsel to inquire when responsive documents to which no objections were made would be forthcoming. On August 2, 2023, Counsel for Defendants explained that his clients were compiling documents and that they could be expected on August 18, 2023. After several emails and meet and confer conferences, on September 29, 2023, Defendants produced what it called their "final batch of responsive documents." Defendants also served "amended" responses at that time and JWB Property Management now stated in the "amended" response that there were no responsive documents to this request that it had already agreed would be provided in their July 27, 2023 response.

Among those documents that were to be produced but were now being held back were complete SafeRent reports for all applicants sent to Defendants in the relevant

timeframe. SafeRent is the tenant screening company used by Defendants to make a tenancy determination for all applicants during the relevant timeframe of 2 years prior to filing the complaint to the present. Complete reports were originally produced by Defendants for the named plaintiffs. The parties conducted a meet and confer on October 3, 2023, and as a result of that conference, Defendants agreed to provide by October 31, 2023, those "Safe Rent Reports for each applicant who defendants denied their application for tenancy where the Safe Rent Report had a Landlord/Tenant Alert."

After multiple follow up conferrals, and nearly 5 months of delay, the Parties reached a standstill in November of 2023 about whether Defendants were required to produce so called "SafeRent" tenant screening reports and copies of driver's license or ID documents for *all* applicants for tenancy with Defendants in the relevant timeframe. On December 12, 2023, Plaintiffs filed a Motion to Compel (Doc. #27) seeking production of those items and on January 4, 2024, this Court granted Plaintiffs' Motion to Compel (Doc. #32) and ordered that Defendants produce complete SafeRent reports and driver's license and ID documents for *all* applicants by February 5, 2024.  In granting Plaintiffs' Motion to Compel, the court held that the SafeRent reports and driver's license and ID documents were responsive to Plaintiffs' First Request for Production of Documents and were relevant and proportional to the needs of the case.

After being ordered to comply with the Court's Order by February 5, 2024, Defendants requested of Plaintiffs additional time to comply the Court's order compelling production. As a matter of professional courtesy, on January 25, 2024, counsel for Plaintiffs granted additional time and agreed to a "rolling production," which extended

Defendants' time to produce the responsive documents beyond that ordered by the Court as follows:

- **By February 5, 2024**: SafeRent reports and identification cards for all tenant applicants during January 1, 2023, through March 9, 2023;

- **By February 25, 2024**: SafeRent reports and identification cards for all tenant applicants during January 1, 2022, through December 31, 2022;

- **By March 5, 2024**: SafeRent reports and identification cards for all tenant applicants during March 9, 2021, through December 31, 2021; and

- **By March 20, 2024**: SafeRent reports and identification cards for all tenant applicants during March 10, 2023, through March 20, 2024.

Defendants ostensibly began producing documents pursuant to the agreed upon schedule, but the production has been untimely, out of sequence, incomplete, and evasive and March 20, 2024, has now come and gone.  While it is impossible to know given that the driver's licenses/identification cards have not been produced in the manner agreed to by the parties, and Plaintiffs are still diligently sorting through the production, they believe the identification documents have been produced. Not so with full and complete SafeRent reports.

On or around February 5, 2024, Defendants produced fully and seemingly without incident complete SafeRent reports for all tenant applicants during January 1, 2023, through March 9, 2023. That is where Defendants' compliance with the Court's order and the courtesy stipulation of the parties abruptly ended.  On random following days in February, Defendant produced a hodge podge of documents that were at best cherry-picked and were only a small portion of those documents ordered produced by the Court and agreed to in the parties' stipulation of rolling compliance. No documents have been produced since March 8, 2024.

Apparently, it did not suit Defendants to comply with the Courts' order or the agreed upon schedule of the parties. So, rather than using the methodology that worked for the first wave of documents produced, Defendants indicated during a meet and confer that they chose to farm out the task to a third party. At that time, Defendants either no longer checked the documents being sent for full compliance or decided compliance was no longer required and produced incomplete and out of order documents over and over again.

On February 28, 2024, immediately upon discovering the discrepancy, Plaintiffs notified Defendants that, at a minimum, the 2021 SafeRent reports it had received to date were missing many pages and, specifically, all were missing the so called "Registry Check" portion of the SafeRent report which contains all the information about the historical landlord tenant records that Defendants use to make a tenancy determination for its applicants. (See email from Thoresen to Piccolo and Rhoden dated February 28, 2024, attached at 1.) The Registry Check portion of the SafeRent reports contains, amongst other information, the jurisdiction in which the eviction was filed, the case number of the eviction allegedly associated with the applicant, the disposition information regarding the case, the filing date, and the disposition date. The incomplete 2021 SafeRent reports were also missing the "Adverse Action" letters sent to denied applicants explaining why they were denied tenancy as well as the Experian credit portion of the reports. (Compare complete SafeRent Report of Ericka Byrd, attached at 2 with SafeRent reports attached to email at 1.) Plaintiffs requested supplementation of the 2021 SafeRent reports to include the missing pages by March 4, 2024, but were informed that was not possible.

On February 29, 2024, counsel for Plaintiffs sent an email requesting a conferral call to discuss when the supplementation could occur and why the complete reports had not been produced initially and why it was not possible to have complete documents ordered by the court. (See email from Thoresen to Piccolo and Rhoden dated February 29, 2024, attached at 3.) Having received no response, Plaintiffs' counsel emailed again on March 5, 2024, to inquire on the status of the production, reiterate the need for conferral and to notify Defendants that the 2022 SafeRent reports were also incomplete in the same manner as the 2021 reports. (See email from Thoresen to Piccolo and Rhoden dated March 5, 2024, attached at 4.)

On March 8, 2024, the parties conferred and could not agree on a timeline for supplementation, nor could Plaintiffs agree to accept Defendants proposal to produce only some documents rather than all of those ordered by the Court. (See email from Thoresen to Piccolo and Rhoden dated March 11, 2024, attached at 5.) No additional documents have been produced by Defendants after the call despite Plaintiffs voluntarily extending the deadline set by the Court in its order over 30 days up to and through March 20, 2024. It has been 8 months since Plaintiffs' First Requests for Production were served, and Plaintiffs still do not have all responsive documents even after an order of the court requiring production.

## Argument

Under Rule 37(a)(4), an evasive or incomplete answer to an interrogatory or response to a request for production "must be treated as a failure to disclose, answer, or respond." *See also Giroux v. Kangamiut Contractors APS*, No. 3:10-cv-35-J-37JBT, 2011 WL 3702422 (M.D. Fla. Aug. 22, 2011) (granting motion to compel and treating the

defendant's evasive and incomplete responses as a failure to respond). Rule 26(g) requires that "an attorney must make a reasonable investigation and effort to assure that the client has provided all information and documents available to it which are responsive to the discovery request." *Sexton v. United States*, 14 Fla. L. Weekly Fed. D 315, 2001 WL 649445, *1 (M.D. Fla. April 12, 2001).

In the parties' meet and confer held on March 8, 2024 and after the Court had already granted Plaintiffs' First Motion to Compel, Defendants' position seemed to be that in their opinion, Plaintiffs do not need the missing documents and information ordered by the Court that is contained in full SafeRent reports received by Defendants, including the "RegistryCheck," Experian, and Adverse Action sections. (See Exhibit 5.)

As a starting point, the Court's January 4, 2024 Order Granting Plaintiffs' First Motion to Compel clearly requires full and complete disclosure and production of those documents, without reservation.

Plaintiffs seek the complete reports that Defendants received from SafeRent, a tenant screening company used by Defendants, regarding *all* applicants for tenancy for a two-year period prior to filing the initial Complaint to the present. Despite explicit rejection of the argument by the Court, Defendants continue to maintain there is some carve out allowing them to provide partial reports or only provide complete reports for a subset of applicants. This imagined carve out also includes the Registry Check pages of the SafeRent Report that have information relevant to the eviction filings relevant to Plaintiffs' claims that Defendants' screening policy is discriminatory. The court found the documents that Defendants are refusing to produce "responsive, relevant, proportional, and discoverable."

If there were any questions remaining, Defendants have raised defenses related to the causation of the denial of applicants' for tenancy and as a result the Court ordered these documents produced for their relevancy to causation. Defendants also have claimed a legitimate business need for what is a discriminatory admissions policy throughout the litigation including in their affirmative defenses set forth in their Answer to the Complaint (Doc. #15) and in the pending Motion to Dismiss the First Amended Complaint. (Doc. #28.) The entire SafeRent report (including the RegistryCheck, Experian credit information, and Adverse Action notices contained in the SafeRent report) for all applicants is relevant for this reason and necessary to determine whether alternative reasons for denial (such as credit) are legitimate or existed on the face of the report, whether less restrictive alternatives are available. The Court found as much when it found that the documents at issue "appear relevant and proportional to the issue of whether Defendants' challenged policy has a disparate impact on Black housing applicants, as alleged in the First Amended Complaint." (Doc. #32.)

Defendants proposed during the recent meet and confer that they be allowed to sort through the documents already ordered by the Court and only produce those that contain a Landlord/Tenant Alert as the baseline. That is unacceptable for a number of reasons.

First, full and complete responses and not responses as modified by Defendants were ordered by the Court. Moreover, these documents are unquestionably in Defendants' possession and control. Portions of the SafeRent reports produced by Defendants to date indicate that Defendants in fact requested and received Registry Check, Experian, and adverse action letters from SafeRent as part of the full SafeRent

report when assessing all applicant's applications. (See e.g. attached SafeRent report at Exhibit 2) Yet, those pages are conspicuously missing from many of the 2021 and 2022 reports. (See e.g. attached SafeRent report at Exhibit 1.)

Defendants' position in the recent meet and confer is that this task is cumbersome and too difficult and that ferreting through the documents somehow lessens that difficulty. However, full and complete responsive documents to the 2023 timeframe were produced in their entirety earlier than promised in the stipulated rolling production. The remaining cherry-picked documents from 2021 and 2022 have not been adequately produced nor were they provided in any cogent manner. It stands to reason that it would be more time-consuming and burdensome for Defendants to engage in a multi-step process of looking for those applicants that had Landlord/Tenant Alerts, separating out those applicants who do not, printing only those portions of the applicants SafeRent Reports without Landlord/Tenant Alerts that Defendants deem important and compiling those. The SafeRent reports are being produced to Plaintiffs in PDF format also presumably making it more time consuming to remove these pages from the reports prior to producing them than to produce the entire reports in their possession and control as was ordered. The Court ordered instead a simple uniform process of producing the full SafeRent report (with all sub-reports/pages) for all applicants.  The documents already produced from 2023 demonstrate the simplicity and integrity of that process.

Equally troubling with Defendants' cherry-picking proposal is that Defendants previously produced SafeRent Reports that Defendants purported to be those for *all* applicants during the relevant time period that had an eviction appear on the SafeRent report with a Landlord/Tenant Alert and whose applications for tenancy were

denied. Defendants produced approximately the 50 reports they deemed as responsive under these parameters. (See Email from Piccolo to Garrow and Thoresen dated October 10, 2023; Email from Piccolo to Garrow dated November 17, 2023, attached at 6.) In contrast, Plaintiffs initial review of the SafeRent reports received because of the Court's ruling on Plaintiffs' First Motion to Compel show many more applicants with SafeRent Reports having Landlord Tenant Alerts that were denied than were originally produced. (See e.g. SafeRent Report not produced on November 17, 2023 but produced subsequent to the Court Order, attached to Exhibit 1.) Given that discrepancy and the failure of the Defendants to accurately "self-identify" responsive documents, Plaintiffs simply cannot rely on Defendants to be the gatekeepers of what documents it receives nor was that methodology anticipated by the Court's order.

The piecemeal way in which documents have thus far been produced with various portions of SafeRent Reports omitted also creates an undue burden on Plaintiffs to match any supplemental Registry Check only files back with the partial SafeRent report already produced for that same applicant. The Court ordered full and complete SafeRent reports for the relevant time periods in 2021 and 2022, much like those already produced for January-March 2023, and Defendants should be required to immediately produce the remaining documents that were previously ordered by the Court.

Finally, allowing Defendants to sua sponte and unilaterally decide to limit the Court ordered production to only those SafeRent reports that contain the so called 'Landlord/Tenant' alert is unworkable because it excludes relevant applicant comparators from the document set. For example, some applicants have a civil eviction history that appears in the RegistryCheck section but that history did not trigger a Landlord/Tenant

alert. For example, if Defendants are claiming that they are using a five-year eviction filing lookback period, as they have testified was used at some time, and the eviction were to antedate the report by 5 years and 1 month it would not trigger a Landlord/Tenant Alert but could be a consideration in the denial of an application for tenancy. Documents showing the full history for each applicant are relevant to Plaintiffs claims that Defendants' policy to deny an application based on a prior eviction filing alone is discriminatory, is not rationally tied to a legitimate business need, and that less discriminatory alternatives exist. The Court has ordered that the full SafeRent Reports (including the RegistryCheck pages) should be produced for all applicants during the relevant timeframe as they "appear relevant and proportional to the issue of whether Defendants' challenged policy has a disparate impact on Black housing applicants, as alleged in the First Amended Complaint."

Rule 37 authorizes the court to impose sanctions when a litigant or attorney fails to comply with discovery rules or orders. If a party or a party's officer, director, or managing agent fails to obey an order to provide or permit discovery, including an order under Rule 37(a), the court where the action is pending may issue further just orders. They may include the following: "treating as contempt of court the failure to obey any order Sanctions may be imposed for noncompliance with a discovery order." Fed. R. Civ. P. 37(b)(2)(A) (vii). "Instead of or in addition to such order, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified, or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "Rule 37 sanctions are intended to prevent unfair prejudice to the

litigants and insure [sic] the integrity of the discovery process." *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374–75 (11th Cir. 1999) (per curiam) (citation omitted). The Court has "broad discretion to fashion appropriate sanctions for violation of discovery orders...." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993).

The Middle District Handbook on Civil Discovery Practice recognizes that Federal Rule of Civil Procedure 37 "provides that if a party must seek relief from the Court to compel a recalcitrant party to respond, the moving party may be awarded reasonable expenses including attorney's fees incurred in compelling the responses." Moreover that "Rule 37 is enforced in this district" and "if a Court order is obtained compelling discovery, unexcused failure to comply with such an order is treated by the Court with special gravity and disfavor." MIDDLE DISTRICT DISCOVERY, A HANDBOOK ON CIVIL DISCOVERY PRACTICE IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, Section I, E. This Court has ordered sanctions when a recalcitrant Defendant has failed to comply with orders of the Court. *See e.g. Giroux v. Hermitage International, Ltd.,* WL 13295122 (M.D. Florida, November 21, 2011)(Toomey, U.S.M.J.); *Kauffman v. Trans High Corp.*, WL 9593988, (M.D. Florida, December 14, 2021)(Toomey, U.S.M.J.).

Here, Defendants have adopted a position that they need not produce those documents previously ordered produced by the Court for the same reasons that were previously rejected by the Court. Defendants also seek to use the same work around, proposing that Defendants be the gatekeeper of responsive documents, which Defendants attempted before and their incomplete responses at least in part precipitated Plaintiffs' First Motion to Compel. Based on the failure to comply with the

order of the Court, this Court could order sanctions up to and including the Court entering a default judgment against Defendants if it found that doing so was not unjust. At a minimum the Court should find it is not unjust to award reasonable expenses including attorneys' fees for bringing the instant motion.

## CONCLUSION

Plaintiffs respectfully request that the Court enter an Order compelling Defendants to produce all the documents set forth above within 15 days of the Order and grant sanctions.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, and Rule 3.01(g), Local Rules for the Middle District of Florida, counsel conferred on multiple occasions as described above trying to narrow the issues and the issues set forth in this Motion remain outstanding. Therefore, the parties do not agree on the resolution of any part of this Motion.

Dated: March 21, 2024                    RESPECTFULLY SUBMITTED,

**JACKSONVILLE AREA LEGAL AID, INC.**

By:    */s/ Suzanne Garrow*
Suzanne Garrow (Lead Counsel)
Fla. Bar No.: 122184
Jacksonville Area Legal Aid
126 West Adams Street
Jacksonville, FL 32202
(904) 356-8371 Ext. 374
suzanne.garrow@jaxlegalaid.org

*/s/ Adam Thoresen*
Adam Thoresen
Fla. Bar No.: 57675
Jacksonville Area Legal Aid
126 West Adams Street
Jacksonville, FL 32202
(904) 356-8371 Ext. 202
adam.thoresen@jaxlegalaid.org

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on this day, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.


                                        */s/ Suzanne Garrow*
                                        Attorney for Plaintiffs