## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Jacksonville Division

ERICKA M. BYRD, KEMONE BROOKS,
QUANTEZ MOORE, and
EARNESTINE LAWSON, on behalf of
themselves and on behalf of others
who are similarly situated,        Case No.: 3:23-cv-00266-WWB-JBT
Plaintiffs

v.

JWB PROPERTY MANAGEMENT, LLC and
JWB REAL ESTATE CAPITAL, LLC
    Defendants.

### PLAINTIFFS' MOTION TO COMPEL COMPLETE RESPONSES TO PLAINTIFFS' THIRD REQUESTS FOR PRODUCTION OF DOUMENTS TO DEFENDANT

Plaintiffs, pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure and Local Rule 3.01(g), move the Court to compel Defendants, JWB Property Management LLC, and JWB Real Estate Capital, LLC (collectively "JWB") to serve complete responses and produce responsive documents to Plaintiffs' Third Request for Production of Document and in support therefore states:

### Factual Background

On March 9, 2023, Plaintiff filed their Complaint. (Doc. #1). Plaintiffs allege that Defendants violated the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA") on both a class and individual basis.  Plaintiffs seek to vindicate the rights of Black housing applicants in Jacksonville, Florida who are deterred and denied from housing and are disparately impacted by Defendants' tenant

screening policy which bars them from tenancy at rental housing owned,

managed, controlled, or leased by Defendants based on a screening criterion that

is not an indicia of tenant worthiness. That criterion is the mere *filing* of an

eviction complaint against them. On April 20, 2023, Defendants answered the

original Complaint, (Doc. # 15), and pretrial litigation began.

On May 11, 2023, the Court adopted the parties' proposed schedule and

entered its Case Management and Scheduling Order and Referral to Mediation.

(Doc. #17).[1] On May 15, 2023, Defendants served their Initial Disclosures which

failed to provide documents, or a description and the location of documents and

stated instead that:

> [p]laintiffs have not yet propounded any discovery requests on
> Defendants. Defendants are beginning to locate documents that may
> be relevant to Plaintiff's claims or Defendants' affirmative defenses.
> Defendants will disclose relevant documents that are not privileged or
> otherwise protected from disclosure as they become known.

*See* Exhibit 1, attached.[2] No documents were ever produced as a part of initial

disclosures nor was any supplement made thereto. As a result, Defendants failed

---

[1] The Court granted a Joint Motion of the Parties to Amend the Case Management and Scheduling Order on December 7, 2023.

[2] In making initial disclosures, a disclosing party must provide certain information to other parties without awaiting a discovery request, including the name and, if known, the address and telephone number of each individual likely to have discoverable information that such party may use to support its claims or defenses, together with the subjects of such information, unless the sole use is impeachment. Fed. R. Civ. P. 26(a)(1)(A)(i). Upon amending Rule 26(a)(1) in 2000 to promote national uniformity, the Advisory Committee reiterated the investigative purpose of the rule by explaining that the disclosure obligation's reference to "claims and defenses" mandates a party's disclosure of "information it may use to support its denial or rebuttal of the allegations, claim, or defense of another party." Fed. R. Civ. P. 26 Advisory Committee Notes (2000 Amendment). *Ho v. Lopano*, 8:18-CV-2802-T-36SPF, 2019 WL 13262728 (M.D. Fla. Dec. 13,

to produce "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses" as required by Fed. R. Civ. P. 26(a)(1)(A)(ii).

On November 6, 2023, Plaintiffs filed the operative First Amended Complaint. (Doc. #20). On December 15, 2023, Defendants moved to dismiss the First Amended Complaint, (Doc. #28), and that Motion was denied on June 3, 2024. (Doc. #40). Discovery has been ongoing. Plaintiffs have taken six depositions and discovery continues with little need for intervention by the Court. On May 9, 2024, Plaintiffs Served their Third Request for Production of Documents on both Defendants. Those requests are the same as to each Defendant. On June 10, 2024, Defendants served responses with no documents attached and interposing objections. The parties met and conferred on June 17, 2024, to narrow the issues for the Court.

### ARGUMENT

#### *Scope of Discovery*

---

2019) Because "accelerat[ing] the exchange of basic information about the case and eliminat[ing] the paper work involved in requesting such information" is a "major purpose" of Rule 26(a), the rule "should be applied in a manner to achieve those objectives." Fed. R. Civ. P. 26 Advisory Committee Notes (1993 Amendment). Rule 26(a) further provides, "A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case...." Fed. R. Civ. P. 26(a)(1)(E). Lafleur v. State Univ. Sys. of Florida, 8:20-CV-1665-KKM-AAS, 2021 WL 963938, at *1 (M.D. Fla. Mar. 15, 2021)

The scope of discovery permitted under Rule 26(b) of the Federal Rules of Civil Procedure is broad. "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *McBride v. Rivers*, 170 Fed. Appx. 648, 659 (11th Cir. 2006) (the scope of allowable discovery is determined by the claims and defenses raised in the case). "The party objecting to the discovery request has the burden to explain, with specificity, why the request is unduly burdensome, vague, or overly broad.") (emphasis supplied). *Siddiq v. Saudi Arabian Airlines Corp.*, 2011 WL 6936485, at *3 (M.D. Fla. 2011).

Under Rule 37(a)(4), an evasive or incomplete answer to an interrogatory or response to a request for production "must be treated as a failure to disclose, answer, or respond." *See also Giroux v. Kangamiut Contractors APS*, No. 3:10-cv-35-J-37JBT, 2011 WL 3702422 (M.D. Fla. Aug. 22, 2011) (granting motion to compel and treating the defendant's evasive and incomplete responses as a failure to respond). Finally, Rule 26(g) requires that "an attorney must make a reasonable investigation and effort to assure that the client has provided all information and documents available to it which are responsive to the discovery request." *Sexton v. United States*, 14 Fla. L. Weekly Fed. D 315, 2001 WL 649445, *1 (M.D. Fla. April 12, 2001). "Attorneys should not make objections solely to avoid producing documents that are relevant to any party's claim or defense and proportional to the needs of the case." *Middle District Discovery* (2021) at § III.A.6. Objections to requests for production should be specific, not generalized, and should be in

compliance with the provisions of Rule 34….General or blanket objections should be used only when they apply to every request. Boilerplate objections such as "the request is overly broad, unduly burdensome, and outside the scope of permissible discovery" are insufficient without a full, fair explanation particular to the facts of the case. *Id.*

### *Elements of a Disparate Impact Claim*

In their Third Request for Production of Document to both parties Plaintiffs seek documents in support of their claim and Defendants' defenses. The disparate impact analysis under the Fair Housing Act begins here with a plaintiff having the burden to show that a screening policy or practice has a discriminatory effect. Meaning that a plaintiff must prove that the neutral policy at issue, an automatic bar to tenancy based on an eviction filing alone, causes or predictably will cause a disparate impact based on one or more of the characteristics protected by the Fair Housing Act. *See Texas Dept. Of Hsg. and Community Affairs v. Inclusive Cmtys. Project, Inc.* 576 U.S. 519, 542-43 (2015).

On June 3, 2024, the court here stated that in this case Plaintiffs meet their burden at the pleading stage and Defendants' Motion to Dismiss was denied by the Court. (Doc. # 39). The Court found:

> In this case, Plaintiffs argue that Black renters are statistically more likely than their White counterparts to have had an eviction filing made against them. Therefore, Plaintiffs argue, the categorical exclusion of persons with a history of eviction filings will deter and eliminate more Black housing applicants than White housing applicants. In support of this argument, Plaintiffs allege that Blacks account for roughly 30.9 percent of the population of Duval County and Black renters in the United States account for 51.1

> percent of renters threatened with eviction, despite making up only 18.6 percent of the renting population. (Doc. 20, ¶¶ 109, 121). Additionally, Plaintiffs allege that a random sampling of eviction filings in Duval County in 2022 demonstrated that seventy-one percent of defendants were Black in cases "where race was either volunteered or could be imputed." (Id. ¶ 122). Finally, Plaintiffs allege that in the last six months of 2022, a roughly equal number of evictions were filed against renters in predominately Black census tracts in Duval County as those filed in White census tracts. (Id. ¶ 123).
>
> Taking Plaintiffs' statistical allegations as true, which the Court must do at this stage of the proceedings, Plaintiffs have sufficiently alleged that Defendants' application of the eviction filing policy is likely to disproportionately foreclose rental opportunities for Black applicants in Duval County as compared to their White counterparts.

(Doc. #39).

If a plaintiff proves that a tenant screening policy or practice has a discriminatory effect, the burden shifts to the defendant to prove that the policy or practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest. 46 See 24 C.F.R. § 100.500(c)(2); *see also Inclusive Cmtys. Project*, 576 U.S. at 541. This interest may not be hypothetical or speculative and screening criteria and standards must be well-tailored to predict future behavior 24 C.F.R. § 100.500(c)(2). If a defendant meets this burden, the burden shifts back to the plaintiff to prove that such interest could be served by another practice that has a less discriminatory effect. 8 24 C.F.R. § 100.500(c)(3); *accord Inclusive Cmtys. Project,* 576 U.S. at 527.

In their Third Request for Production of Documents, Plaintiffs seek evidence in support of their claims and defenses as alleged.

### *Plaintiffs' Requests for Production and Response[3]*

## Substantial, legitimate, nondiscriminatory interest

14.     All documents, reports, studies, or data on which Defendant or either Defendant rely(ies) on to support the position that there are no less restrictive alternatives to its tenant selection criteria in effect from two years prior to filing the complaint to the present.


23. Documents including ESI that discuss, refer to, comprise or relate to publicly available information on websites owned, controlled or engaged by Defendant or Defendants that show applications for tenancy and qualifications for approval or denial of a tenancy with Defendant for two years prior to the filing of the complaint to the present.

24.     Documents including ESI that discuss, refer to, comprise or relate to internal information of Defendant or Defendants, including any agent of Defendant or Defendants, that show applications for tenancy and qualifications for approval or denials of a tenancy with Defendants for two years prior to the filing of the complaint to the present.

31. Documents showing any alleged business necessity for the policy of not allowing a potential applicant to submit an application under the "Show Mojo" platform if they have an eviction filing against them as shown in the First Amended Complaint paragraph 53.


33. Documents showing any alleged business necessity for the policy of not allowing a potential applicant to submit an application after speaking with a leasing agent or some other employee or agent of Defendant because they have an eviction filing against them.


34. Documents showing any alleged business necessity for the policy relating to tenant approval or denials based on eviction filings as set forth in Defendants' "Standard Qualifications."

---

[3] Compare both RFPs here

35. Documents showing any alleged business necessity for the policy relating to tenant approval or denials based on eviction filings as set forth in Defendants' "Second Chance Qualifications."

36. Documents showing any alleged business necessity for the policy relating to tenant approval or denials based on eviction filings as set forth in Defendants' "HUD Qualifications."

40. Produce all data, studies, reports, presentations, or any other documents, from any source whether internal or external, that are in any Defendants possession or control and that are relied on by you to support any business reason for your tenant admissions policy that excludes applicants with prior eviction filings, regardless of adjudication, as set forth in the Standard, Second Chance and HUD Qualifications at Bates Nos. JWB 01580-94, JWB 220-28.

JPM's Response: Objection. JPM believes that it is withholding responsive documents to this Request. Nonetheless, JPM is uncertain because this Request is objectionable as it fails to describe with reasonable particularity the documents that Plaintiffs seek via this Request. Moreover, to the extent that this Request requests documents that are attorney-client communications or documents that have been prepared in anticipation of litigation and otherwise constitute privileged work product, JPM objects to producing the same to Plaintiffs based upon the attorney-client privilege or the work-product privilege. Also, this Request requests documents that are not proportional to the needs of this case and the burden or expense of responding to this Request outweighs its likely benefit. Defendants provide a single boilerplate response to all the requests.

Defendants claim that the requests "fail[s] to describe with reasonable particularity the documents that Plaintiffs seek." But the discovery requests above are targeted at gathering evidence relating to the same element of the case; Defendants' burden to prove that its policy or practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest. In their Answer and

Affirmative Defenses to Plaintiffs' First Amended Class Action Complaint and Demand for a Jury Trial Defendants' Second Affirmative Defense states that Defendants "have substantial, legitimate, and non-discriminatory reasons for their leasing policies, and there is no alternative that has a less disparate impact and serves Defendants' legitimate needs." (Doc. #41, page 11). The requests above seek relevant documents regarding Defendants' affirmative defense and seeks proof of whether, and the analysis of, the criteria and standards set forth in its no eviction filing policy are well-tailored to predict tenant success.

By way of example, Request 14 seeks evidence possessed by either Defendant relating to any less restrictive alternative as alleged in their Second Affirmative Defense. Requests 31 and 33 seek documents relating to the legitimate business reason for the policy of not allowing a potential applicant to submit an application under the "Show Mojo" platform if they have an eviction filing against them as shown in the First Amended Complaint paragraph 53 or to apply through a leasing agent. Requests 34-36 and 40 seek documents relating to business reasons for the specific articulated policies to exclude potential renters with eviction filings under each set of Defendants' qualifications for tenancy.

Requests 23 and 24 are seeking outward facing and internal communications qualifications for approval or denials of a tenancy. At the parties' Meet and Confer conference, Plaintiffs offered to limit these communications to internal and external policy communications relating to the no eviction filing policy. Examples discussed at the parties' meet and confer were policies

communicated on Zillow or other websites that are used to lease properties that say that applicants with past eviction filings will not be considered for tenancy and internal documents relating to such policies. Plaintiffs seek documents that demonstrate such policies and communications.

In the boiler-plate response Defendants also state that Plaintiffs' same requests seek "attorney-client communications or documents that have been prepared in anticipation of litigation and otherwise constitute privileged work product." Defendants make this claim but provide no privilege log to go with the responses. Nor are Plaintiffs seeking privileged documents or attorney work product. The requests clearly say that Plaintiffs seek internal and external documents that speak to the business reasons of the no eviction filings policy that is at the core of this matter and is Defendants burden to prove. If Defendants are now saying that they relied on advice of counsel for creating or implementation of the policy at issue, then any privilege is waived, and the documents should be produced.

Lastly in their boilerplate response, Defendants allege "this Request requests documents that are not proportional to the needs of this case and the burden or expense of responding to this Request outweighs its likely benefit." As set forth above, the requests are narrowly targeted to business reasons for the at issue policy. Some documents requested are specifically listed because the documents were referred to by a deponent employed by a Defendant in the case. *See e.g.* Request number 31, 33-40 above and excerpt of the Deposition of A.J.

Fuller taken December 7, 2023, Exhibit. 2, attached.

For these reasons, Plaintiffs request that the Motion to Compel be granted

on these requests and require Defendants to produce documents relating to the

alleged legitimate business reasons for their policy.

## CONCLUSION

Plaintiffs respectfully request that the Court enter an Order compelling

Defendants to produce all the documents set forth above within 10 days of the

Order.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, and Rule
3.01(g), Local Rules for the Middle District of Florida, counsel conferred as
described above trying to narrow the issues set forth in this Motion and those
issues remain outstanding. Therefore, the parties do not agree on the resolution of
any part of this Motion.

Dated: June 21, 2024          RESPECTFULLY SUBMITTED,
                              **JACKSONVILLE AREA LEGAL AID, INC.**

                                   By:    */s/ Suzanne Garrow*
                                   Suzanne Garrow *(Lead Counsel)*
                                   Fla. Bar No.: 122184
                                   Jacksonville Area Legal Aid
                                   126 West Adams Street
                                   Jacksonville, FL 32202
                                   (904) 356-8371 Ext. 374
                                   suzanne.garrow@jaxleglalaid.org

                                   */s/ Adam Thoresen*
                                   Adam Thoresen
                                   Fla. Bar No.: 57675
                                   Jacksonville Area Legal Aid

126 West Adams Street
Jacksonville, FL 32202
(904) 356-8371 Ext. 202
adam.thoresen@jaxleglalaid.org

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this day, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.


*/s/ Suzanne Garrow*
Attorney for Plaintiffs