**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Jacksonville Division**

**ERICKA M. BYRD, KEMONE BROOKS,**
**QUANTEZ MOORE, and**
**EARNESTINE LAWSON, on behalf of**
**themselves and on behalf of others**
**who are similarly situated,**        Case No.: 3:23-cv-00266-WWB-SJH
**Plaintiffs**

**v.**

**JWB PROPERTY MANAGEMENT, LLC and**
**JWB REAL ESTATE CAPITAL, LLC**
        **Defendants.**

**PLAINTIFFS' MOTION TO COMPEL RESPONSES**
**TO PLAINTIFFS' SECOND REQUESTS FOR**
**PRODUCTION OF DOUMENTS TO DEFENDANTS AND RENEWED**
**MOTION TO COMPEL RESPONSES TO PLAINTIFFS' FIRST REQUEST**
**FOR PRODUCTION OF DOCUMENTS**

Plaintiffs, pursuant to Rules 26 and 37 of the Federal Rules of Civil

Procedure and Local Rule 3.01(g), move the Court to compel Defendants, JWB

Property Management LLC, and JWB Real Estate Capital, LLC (collectively

"JWB") to provide complete SafeRent Solutions reports for a subset of applicants

as requested in both Plaintiffs' First Request for Production of Documents and

Plaintiffs' Second Request for Production of Documents and in support therefore

states:

**Factual Background**

On March 9, 2023, Plaintiff filed their Complaint. (Doc. #1). Plaintiffs

allege that Defendants violated the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*

("FHA") on both a class and individual basis.  Plaintiffs seek to vindicate the

rights of Black housing applicants in Jacksonville, Florida who are deterred and

denied from housing and are disparately impacted by Defendants' tenant

screening policy which bars them from tenancy at rental housing owned,

managed, controlled, or leased by Defendants based on a screening criterion that

is not an indicia of tenant worthiness. That criterion is the mere *filing* of an

eviction complaint against them. On April 20, 2023, Defendants answered the

original Complaint, (Doc. #15), and pretrial litigation began.[1] An amended

complaint was timely filed, (Doc. #20), which Defendants moved to dismiss, and

which motion was denied on June 3, 2024. (Doc. #39.)

---

[1] Defendants produced no documents with their Initial Disclosures, nor did they provide any description of documents. In making Initial Disclosures, a disclosing party must provide certain information to other parties without awaiting a discovery request, including the name and, if known, the address and telephone number of each individual likely to have discoverable information that such party may use to support its claims or defenses, together with the subjects of such information, unless the sole use is impeachment. Fed. R. Civ. P. 26(a)(1)(A)(i). Upon amending Rule 26(a)(1) in 2000 to promote national uniformity, the Advisory Committee reiterated the investigative purpose of the rule by explaining that the disclosure obligation's reference to "claims and defenses" mandates a party's disclosure of "information it may use to support its denial or rebuttal of the allegations, claim, or defense of another party." Fed. R. Civ. P. 26 Advisory Committee Notes (2000 Amendment). *Ho v. Lopano*, 8:18-CV-2802-T-36SPF, 2019 WL 13262728 (M.D. Fla. Dec. 13, 2019) Because "accelerat[ing] the exchange of basic information about the case and eliminat[ing] the paper work involved in requesting such information" is a "major purpose" of Rule 26(a), the rule "should be applied in a manner to achieve those objectives." Fed. R. Civ. P. 26 Advisory Committee Notes (1993 Amendment). Rule 26(a) further provides, "A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case...." Fed. R. Civ. P. 26(a)(1)(E). Lafleur v. State Univ. Sys. of Florida, 8:20-CV-1665-KKM-AAS, 2021 WL 963938, at *1 (M.D. Fla. Mar. 15, 2021)

On June 27, 2023, Plaintiffs served their First Requests for Production of Documents on Defendants. Defendants failed to produce SafeRent Solutions' reports that were in their custody and control as responsive documents. SafeRent reports are reports generated for each applicant for tenancy with Defendants by SafeRent Solutions, a third-party tenant screening company. The reports provide a score generated by SafeRent based on criteria given to SafeRent by Defendants. The reports show the identity of an applicant, sometimes including the race of that applicant. *See* SafeRent Report Race identifier, attached at Exhibit 1.[2] The reports show any "alerts" denoting possible issues that bear on tenancy, as wholly directed by Defendants. They also show SafeRent Solutions' recommendation regarding tenancy based on criteria provided by Defendants. *See* Deposition of AJ Fuller at pages 75-76, attached at Exhibit 2. Part of any SafeRent report is a registry check report that shows whether an eviction filing had been made against the applicant. It also shows the disposition or, in many cases, the lack of a disposition in the eviction case. Many of the registry check reports simply indicate "case filed," *See* SafeRent "case filed," attached at Exhibit 3, or "case dismissed." *See* SafeRent Report "case dismissed," attached at Exhibit 4. When the SafeRent report shows that an eviction case was filed, even if no eviction judgment was entered, and it comes up on the SafeRent report, Defendants policy dictates that the applicant's

---

[2] Attached are highly redacted copies of SafeRent reports. If the Court needs unredacted copies, Plaintiffs will file a Motion for Protective Order and to File Under Seal per agreement of the parties.

application for tenancy will be denied. *See* Depo AJ Fuller at page 80, attached at Exhibit 2.

On December 12, 2023, Plaintiffs moved to compel SafeRent reports as responsive to Plaintiffs' First Request for Production of Document No. 5. That request sought, "[d]ocuments or records including ESI showing completed or incomplete applications for tenancy received by Defendant from the JWB website in the two years preceding the filing of the complaint, and the number of applications denied Defendant in whole, or in part, due to a prior eviction filing against the applicant." *See* Defendants' Responses to Plaintiffs' First Request for Production of Documents to Defendants, attached at Exhibit 5 and Exhibit 6.[3] The Plaintiffs also argued that the SafeRent reports are responsive to Plaintiffs' Request Number 13, seeking racial demographics of the applicant pool. On January 4, 2024, the Court granted Plaintiffs' Motion to Compel and ordered SafeRent reports be produced, finding that Plaintiffs' Request Number 5 "can be reasonably read to encompass the universe of all applications in the first clause of the request, and the number of applications denied because of the second clause of the request. (Doc. # 32) Also, that "[t]he reports may also contain demographic information responsive to request number 13. (Id.)

After the motion to compel was granted, Defendants began producing SafeRent reports. They produced two months of complete SafeRent reports for

---

[3] The First and Second Requests for Production of Documents as to each Defendant are the same as to each defendant; meaning each first request to each party is the same and seeks the same documents. Likewise as to the second requests for documents.

2023, including registry check reports, credit reports, criminal check reports and adverse action letters. *See* Exhibit 3. Plaintiffs have received no other SafeRent reports for 2023 and approximately 1 and a half months of reports for 2024. It appears that almost all the reports from 2022 were produced and some from 2021. However, none of the reports produced for 2024, 2022 or 2021 are complete. None have the registry check report which contains the disposition or lack of disposition of an eviction filing. *Compare* Exhibit 1 and Exhibit 3.

The parties conferred multiple times regarding the missing information and Plaintiffs moved to compel Defendants to abide by the prior order of the Court. On April 15, 2024, the Court entered an endorsed order setting forth "the Motion is due to be denied without prejudice" subject to "Plaintiffs serving more specific document requests and Defendants objecting to same if appropriate. Given the ambiguity in Plaintiffs' original document requests (see Doc. 32 at 1-2), Defendants' arguable compliance with the Court's prior Order (Doc. 32), and the potential non-proportionality of some or all of the remaining documents at issue" and also ordering that "the parties must fully confer before any new motion is filed." (Doc. #38)

Prior to the Order of the Court, Plaintiff had served their Second Request for Production of Documents with a targeted request seeking "All SafeRent reports from two years prior to filing the complaint to the Present." Defendants interposed no objection to that request as it pertained to SafeRent reports. *See* Defendants' Responses to Plaintiffs' Second Request for Production of Documents, attached at

Exhibit 7 and Exhibit 8. To date, Defendants have not produced any documents in response to that request.

The parties have conferred multiple times as ordered by the Court. Plaintiffs first offered to limit the SafeRent reports to those reports that contain an LT alert. When no documents were forthcoming, Plaintiffs offered to further narrow the request to complete SafeRent reports for only those reports with an LT alert and a denial, reserving rights if those reports are inadequate once received. *See* communications of counsel, attached at Exhibit 9. In reviewing the documents for the most complete year produced, 2022, and based on the number of reports provided, approximately 430 reports have LT alerts and denials in 2022. Plaintiffs narrowed request seeks the registry check report and any other reports to make those records complete. Similarly, they seek full SafeRent reports for all those applicants with an LT alert and a denial for applicants in the other years of the relevant time frame or two years prior to filing the original complaint to the present.

Discovery closes on August 23, 2024, and these documents are necessary for class certification and Plaintiffs' summary judgment motion.

## ARGUMENT

### *Scope of Discovery*

The scope of discovery permitted under Rule 26(b) of the Federal Rules of Civil Procedure is broad. "Parties may obtain discovery regarding any non-

privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *McBride v. Rivers*, 170 Fed. Appx. 648, 659 (11th Cir. 2006) (the scope of allowable discovery is determined by the claims and defenses raised in the case). Rule 26(g) requires that "an attorney must make a reasonable investigation and effort to assure that the client has provided all information and documents available to it which are responsive to the discovery request." *Sexton v. United States*, 14 Fla. L. Weekly Fed. D 315, 2001 WL 649445, *1 (M.D. Fla. April 12, 2001). Attorneys should not maintain objections to avoid producing documents that are relevant to any party's claim or defense and proportional to the needs of the case. *Middle District Discovery* (2021) at § III.A.6.

### *SafeRent Reports are Relevant to Plaintiffs' Claims and Proportional to the Needs of the Case*

To prove disparate impact a plaintiff must prove the existence and application of a neutral policy, here an automatic bar to tenancy based on an eviction filing alone, causes or predictably will cause a disparate impact based on one or more of the characteristics protected by the Fair Housing Act. *See Texas Dept. Of Hsg. and Community Affairs v. Inclusive Cmtys. Project, Inc.* 576 U.S. 519, 542-43 (2015).

The complete SafeRent reports are needed to show both the existence and application of the policy of a denial of an application based on the mere filing of an eviction. This can be proven by showing that an applicant's SafeRent report has an LT alert, a denial and, in a complete report, the registry check report portion showing the disposition or lack thereof of an eviction case filing against the

applicant. The report may show that the case was filed, and no disposition was recorded, *see* Exhibit 3, or that it was dismissed without a judgment, *see* Exhibit 4, or it may show other dispositions that did not result in an eviction. Complete SafeRent reports are needed to demonstrate the policy and its widespread application by Defendants.

Defendants have also alleged at various times that Plaintiffs were not qualified for tenancy and that it has a substantial, legitimate and nondiscriminatory need for this policy. To support their claims, they point to various other parts of the complete SafeRent reports in support of these averments like the Experian credit report or the criminal background check. They will likely try to make these claims as to members of the putative class. Moreover, SafeRent reports provide comparator evidence that might support or rebut this defense. Without full SafeRent reports there is no way to challenge this defense.

The SafeRent report also may contain information about the identity of the applicants, including racial identifiers. *See* Exhibit 1. Plaintiffs must show that the facially neutral policy has a disparate impact on Black applicants to prove their claim. The race of an applicant is an important element of this proof and may be garnered from the SafeRent reports.

Another reason Plaintiffs need SafeRent reports is that discovery is not bifurcated. Liability discovery is on the same schedule as is discovery that goes to class certification. Discovery closes on August 23, 2024, and Plaintiffs' class

certification motion is due on September 20, 2024. Without these reports there is no way to prove a class action claim. Full SafeRent reports are needed to show those people affected by Defendants' facially neutral albeit discriminatory policy. The reports go to showing numerosity. Based on a review of the only two complete months of reports provided -- those from 2023 -- and the number of incomplete reports with LT alerts and resulting in denials but missing all other information including the registry check report from the most complete year of documents provided  – those from 2022 -- Plaintiffs estimate that approximately 450 people or records each year fall into the category of Plaintiffs' narrowed request. The reports go to whether there are common questions of law and fact as they show how each eviction disposition or lack thereof was treated and how the neutral policy was applied as to them. The reports also show how the class representatives may be suited to represent the class as they have the same or similar claims and defenses and adequately represent the class.

Finally, Defendants will argue that producing the documents is a large undertaking. But Plaintiffs have vastly limited the number of records they are seeking. In addition, this is largely a problem of Defendants' own making. The 2023 complete reports were the first reports provided and appeared to be seamlessly produced. In contrast, slicing and dicing the reports to withhold critical information like the registry check reports and other information is a much larger endeavor requiring much more time and effort. Counsel also indicated during a meet and confer conference that the complete reports were provided by his client

but that the remainder were provided by SafeRent. Thus, complete reports can and should be made available.

For these reasons, Plaintiffs request that the Motion to Compel be granted and require Defendants to produce documents full SafeRent reports for those applicants who applied, have an LT alert on their SafeRent report and whose application were denied.

## CONCLUSION

Plaintiffs respectfully request that the Court enter an Order compelling Defendants to produce all the documents set forth above within 10 days of the Order.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, and Rule 3.01(g), Local Rules for the Middle District of Florida, counsel conferred as described above trying to narrow the issues set forth in this Motion and those issues remain outstanding. Therefore, the parties do not agree on the resolution of any part of this Motion.

Dated: August 9, 2024        RESPECTFULLY SUBMITTED,
**JACKSONVILLE AREA LEGAL AID, INC.**

By:   */s/ Suzanne Garrow*
Suzanne Garrow *(Lead Counsel)*
Fla. Bar No.: 122184
Jacksonville Area Legal Aid
126 West Adams Street
Jacksonville, FL 32202
(904) 356-8371 Ext. 374
suzanne.garrow@jaxleglalaid.org

*/s/ Adam Thoresen*
Adam Thoresen
Fla. Bar No.: 57675
Jacksonville Area Legal Aid
126 West Adams Street
Jacksonville, FL 32202
(904) 356-8371 Ext. 202
adam.thoresen@jaxleglalaid.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Suzanne Garrow*
Attorney for Plaintiffs